Filed 4/14/14 Certified for publication 5/7/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ALEXANDER NAMIKAS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PAUL A. MILLER et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B244685<br>(Super. Ct. No. 56-2011-00393530-<br>CU-BC-VTA)<br>(Ventura County) |

In this "settle and sue" case,[1] Alexander Namikas sued his former attorneys, Paul A. Miller and the Law Offices of Lowthorp, Richards, McMillan, Miller & Templeman P.C. (collectively respondents), for negligently recommending he pay his ex-wife permanent spousal support of $7,000 per month. He alleged the settlement was excessive because respondents improperly calculated his permanent support obligation based upon DissoMaster guidelines instead of a forensic marital standard of living analysis. Family Code section 4320[2] requires trial courts to consider the marital standard

_____

[1] This is a type of malpractice action in which the disgruntled client claims the underlying case was worth significantly more or less than what he or she settled for. (*Barnard v. Langer* (2003) 109 Cal.App.4th 1453, 1461, fn. 12; *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 157, 167.)

[2] All statutory references are to the Family Code unless otherwise stated.

of living, along with numerous other factors, in assessing the need for permanent spousal support.

The trial court granted summary judgment for respondents. It determined Namikas had failed to establish a triable issue of material fact as to whether, in the absence of the alleged negligence, he would have obtained a more favorable judgment or settlement. We affirm.

## FACTS AND PROCEDURAL BACKGROUND[3]

Namikas married Joanne in 1978. He was a dentist and she a pharmacist. Joanne worked part time while their children were growing up, allowing Namikas to concentrate on his dental practice.

Joanne petitioned for dissolution in 2000, after nearly 22 years of marriage. At that time, Namikas's annual income was $314,718. Joanne's income was $44,841. Namikas agreed to pay Joanne temporary spousal support of $7,080 per month. Joanne continued to work part time until 2003, when she entered the Betty Ford Clinic for substance abuse treatment. She successfully completed the program, but did not immediately resume working.

Respondents represented Namikas in the dissolution proceeding. Joanne was represented by Richard L. Taylor. In June 2004, after extensive negotiations, the parties stipulated to entry of judgment based upon a marital settlement agreement (MSA). Pertinent to this action, Namikas received the family home and his dental practice, which generated monthly income of over $30,000. Joanne received the parties' second home, plus two properties with combined monthly rental income of $3,000.

The MSA also provided for permanent spousal support to Joanne of $7,000 per month, $80 less than the temporary support payment. The amount was calculated through the DissoMaster program[4] based on Namikas's "compromise" monthly income of

---

[3] Our factual statement is based upon the undisputed or established facts appearing in the moving and opposing papers on summary judgment.

[4] DissoMaster is a computer software program widely used by courts to set child support and temporary spousal support. (*In re Marriage of Olson* (1993) 14 Cal.App.4th

$27,902 and Joanne's imputed income of $4,000. A copy of the DissoMaster calculation was attached to the MSA.

Prior to recommending the settlement, Miller informed Namikas the marital standard of living is a factor courts consider in awarding spousal support, but did not suggest that Namikas obtain a forensic marital standard of living analysis. Namikas grudgingly accepted the settlement, in part, because it imputed $4,000 in income to Joanne even though she was unemployed, ended the costly dissolution proceeding and resulted in after-tax support payments of $3,855 per month. Joanne agreed to pay her own attorney fees.

Over the next few years, Namikas periodically asked respondents about modifying support. He was told it was too soon to seek modification. In 2008, Namikas consulted with another attorney, who recommended an analysis of Joanne's monthly needs based on the marital standard of living. At Namikas's request, respondents retained a forensic accountant, William Scott Mowrey, Jr., to perform the analysis. Using the date of separation claimed by Joanne, Mowrey determined Joanne had monthly support needs of $7,738 to maintain her marital standard of living. Based on that analysis, Namikas concluded Joanne needed $738 in monthly spousal support to supplement the $7,000 she was receiving in rental income ($3,000) and imputed income ($4,000).

Subsequently, Namikas retained a different law firm to request modification of spousal support. Judge William Liebmann granted the request in 2012. Rejecting Mowrey's calculations as outdated, Judge Liebmann "accepted [Joanne's] evidence regarding the amount of her reasonable needs, and [found] that a net disposable income from all sources of approximately $9,575 [was] sufficient for [all] her needs." He recognized Joanne could meet these needs if she worked full-time as a pharmacist, but was "not convinced from the evidence presented that she is capable of working that schedule at this time, nor that she would have been capable of doing so if she had made additional efforts since the entry of the judgment."

1, 5, fn. 3; see Cal. Rules of Court, rule 5.275 [standards for computer software to assist in determining support].)

3

Weighing the factors enumerated in section 4320, Judge Liebmann found that "[t]he balance of hardships [is] clearly in favor of [Joanne]." He determined that if she works 24 hours per week, a monthly spousal support payment of $2,750, along with her other sources of income, will meet her needs of $9,575. Judge Liebmann ordered Namikas to pay $2,750 per month for two years to give Joanne time to increase her work schedule to fully support herself. He reduced support to zero at the end of that period.

Namikas filed a complaint for legal malpractice against respondents, claiming their negligence caused him to pay excessive spousal support. He alleged they negligently failed to conduct a marital standard of living analysis prior to recommending settlement and had improperly used the DissoMaster program to calculate permanent support. Respondents moved for summary judgment, contending they were not negligent and that even if they were, Namikas could not prove that Joanne would have settled for less than $7,000 per month or that he would have obtained a better outcome at trial. Respondents submitted a declaration from Taylor that stated, inter alia, that even if he had received Mowrey's calculations at the time of the settlement negotiations, he "still would not have agreed to a settlement of the spousal support issue for less than $7,000 monthly."

Namikas responded with a declaration from Roslyn Soudry, an experienced family law attorney, who opined that respondents' failure to "strongly" recommend that Namikas obtain a forensic marital standard of living analysis fell below the standard of care for attorneys practicing family law in Southern California. Soudry offered her expert opinion, based on her experience, that "the fact that permanent spousal support was based on a DissoMaster analysis resulted in a higher level of spousal support than would have been obtained based on an actual trial of the factors set forth in . . . [s]ection 4320."

The trial court granted the summary judgment motion. It determined a triable issue of material fact exists as to breach of the duty of professional care, but not as to causation and damages. The court concluded Joanne would not have accepted a settlement of less than $7,000 per month even if a forensic standard of living analysis had

4

been prepared. It stated: "Reasonable minds cannot differ as to the legal effect of this evidence: plaintiff could not have obtained a more favorable settlement. As for what [plaintiff] might have obtained at trial, [respondents] point out that plaintiff said he didn't know whether the court would have awarded Joanne less than $7,000 in spousal support." The court further determined there was no evidence of "actual damage to plaintiff as opposed to possibility or probability."

The trial court rejected Namikas's contention that an inference of causation and damage may be drawn from the subsequent modification of spousal support. It explained: "[Judge Liebmann] in 2012 couldn't go back and find that the spousal support the parties agreed to [in 2004] was excessive, even if it was. [He] had to determine that circumstances had changed since the settlement, and [he] did. In short, [he] found that Joanne had not used sufficient reasonable efforts to improve her financial situation. This finding has no bearing on what [a] court might have granted in spousal support had the parties not settled." Namikas appeals.

DISCUSSION

*Standard of Review*

Summary judgment is proper where there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) To prevail on a summary judgment motion, the moving defendant has the initial burden to show a cause of action has no merit because an element of the claim cannot be established or there is a complete defense to the cause of action. (*Id.* at subd. (o); *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) To satisfy this burden, the defendant must present evidence which either conclusively negates an element of the plaintiff's cause of action, or which shows the plaintiff does not possess, and cannot reasonably obtain, needed evidence. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 855.) Once the defendant has made this showing, the burden shifts to the plaintiff to set forth specific facts which show a triable issue of material fact exists. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476-477.)

5

We review the trial court's decision de novo, considering all the evidence presented by the parties (except evidence properly excluded by the trial court) and the uncontradicted inferences reasonably supported by the evidence. (*Merrill v. Navegar, Inc., supra,* 26 Cal.4th at p. 476.) The evidence is viewed in the light most favorable to the plaintiff, liberally construing the plaintiff's submissions while strictly scrutinizing the defendant's showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor. (*Saelzler v. Advanced Group 400, supra*, 25 Cal.4th at p. 768.)

*Legal Malpractice*

To prevail on his legal malpractice claim, Namikas must prove four elements: "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.]" (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199-1200; *Filbin v. Fitzgerald, supra,* 211 Cal.App.4th at p. 165.) "[F]ailure to prove[ ] any of [the elements] is fatal to recovery." (*Nichols v. Keller* (1993) 15 Cal.App.4th 1672, 1682.)

The trial court determined, and the parties do not dispute, that triable issues of material fact exist regarding whether respondents breached a duty of professional care. The question presented here is whether the evidence established the absence of any triable issue as to causation and damages.

"In the legal malpractice context, the elements of causation and damage are particularly closely linked." (*Hecht, Solberg, Robinson, Goldberg & Bagley LLP v. Superior Court* (2006) 137 Cal.App.4th 579, 591.) The plaintiff must prove, by a preponderance of the evidence, that but for the attorney's negligent acts or omissions, he would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred. (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241; *Barnard v. Langer, supra,* 109 Cal.App.4th at p. 1461.) This standard requires a "trial-within-a-trial" of the underlying case, in which the malpractice jury must decide what a reasonable jury or court would have done if the underlying matter had been tried instead of settled.

6

(*Mattco Forge, Inc. v. Arthur Young & Co.* (1997) 52 Cal.App.4th 820, 834.) This method "'is the most effective safeguard yet devised against speculative and conjectural claims . . . . It is a standard of proof designed to limit damages to those actually *caused* by a professional's malfeasance. . . .'" (*Jalali v. Root* (2003) 109 Cal.App.4th 1768, 1773-1774.)

"It is not enough for [the plaintiff] to simply claim . . . that it was possible to obtain a better settlement or a better result at trial. The mere probability that a certain event would have happened will not furnish the foundation for malpractice damages." (*Barnard, supra,* 109 Cal.App.4th at p. 1461.) "'Damage to be subject to a proper award must be such as follows the fact complained of as a *legal certainty*.' [Citation.]" (*Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514, 1518 (*Marshak*).) In other words, the plaintiff must show that "[he] would *certainly* have received more money [or had to pay less] in settlement or at trial." (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1528, italics added; see *Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 662-664 [evidence fails to show that but for that attorney's delay in handling action, case would have settled sooner or on more favorable terms].)

"The requirement that a plaintiff need prove damages to 'a legal certainty' is difficult to meet in any case. It is particularly so in 'settle and sue' cases," which are inherently speculative. (*Filbin v. Fitzgerald, supra*, 211 Cal.App.4th at p. 166.) "[T]he amount of a compromise is often 'an educated guess of the amount that can be recovered at trial and what the opponent was willing to pay or accept. Even skillful and experienced negotiators do not know whether they received the maximum settlement or paid out the minimum acceptable. Thus, the goal of a lawyer is to achieve a "reasonable" settlement, a concept that involves a wide spectrum of considerations and broad discretion. [¶] Theoretically, any settlement could be challenged as inadequate, and the resolution is likely to require a trial. . . .'" (*Barnard v. Langer, supra*, 109 Cal.App.4th at pp. 1462-1463, fn. 13.)

In *Barnard*, the plaintiff claimed his attorney's negligence caused him to settle an inverse condemnation action for too little money or on different terms. The

court granted a nonsuit, concluding he had only submitted evidence of speculative harm and could not establish that, but for his attorney's negligence, he would have received a better outcome than was represented by the negotiated settlement. (*Barnard v. Langer, supra,* 109 Cal.App.4th at pp. 1462-1463.) The court observed that the plaintiff was required to present "more than a wish list of damages, unsupported by evidence that the [defense] would have settled for more, or by expert testimony to show that [the plaintiff's] amounts could have been recovered had the case been tried . . . ." (*Id.* at p. 1463, fn. omitted.)

Because causation is a question of fact for the jury, it ordinarily cannot be resolved on summary judgment. (*Vasquez v. Residential Investments, Inc.* (2004) 118 Cal.App.4th 269, 288.) In legal malpractice claims, the absence of causation may be decided on summary judgment "only if, under undisputed facts, there is no room for a reasonable difference of opinion." (*Kurinij v. Hanna & Morton* (1997) 55 Cal.App.4th 853, 864.)

*Causation and Damages*

Applying the foregoing principles, we must decide whether a triable issue of material fact exists regarding whether, but for respondents' alleged negligence, Namikas would have received a better settlement or outcome at trial. Namikas alleged that if respondents had advised him to obtain a forensic marital standard of living analysis, he would have obtained Mowrey's analysis prior to settlement. He further alleged that had that analysis been available, he "never would have agreed to pay $7,000 per month in support. If Joanne had refused to settle for a reasonable amount close to her actual marital standard of living [he] would have insisted on [respondents] trying the spousal support issue then."

Respondents presented evidence, through Taylor's declaration, that even if Taylor had been given Mowrey's standard of living analysis in 2004, he would not have settled the spousal support claim for less than $7,000 per month. Namikas objected on the basis that Joanne, and not Taylor, had authority to settle. In reply, respondents submitted a declaration from Joanne, who stated: "When agreeing to settle the amount of

8

spousal support to be paid to me, I always would have followed the advice of my attorney, Mr. Taylor, and if Mr. Taylor had advised me not to agree to accept less than $7,000 monthly spousal support, I would have followed his advice." Namikas claims that Taylor's declaration is inadmissible and that Joanne's declaration was untimely. He also contends the trial court abused its discretion by denying his request for a continuance to "test" Joanne's declaration through cross-examination.

It is undisputed Taylor negotiated the support settlement on Joanne's behalf. Namikas has not shown Taylor's statements are irrelevant or otherwise inadmissible. Although Taylor stated he "would not have agreed to a settlement" of less than $7,000 per month, instead of saying what his client would have agreed to, he implied he had personal knowledge of what Joanne would have done in that situation. Joanne's late-filed declaration is more persuasive, but Taylor's declaration was enough to shift the burden to Namikas to produce admissible evidence demonstrating a triable issue of fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 72.) He failed to do so. The record is devoid of any suggestion Joanne would have settled for less than $7,000.

Even if an inference to the contrary could be drawn, there is no evidence as to what the settlement amount would have been. Lawsuits often "settle for reasons not necessarily related to [their] merits." (*People v. Fuiava* (2012) 53 Cal.4th 622, 723.) If Joanne had agreed to less spousal support, for example, she may have demanded a larger property settlement or required that Namikas pay her attorney fees. Thus, any "actual harm from respondents' conduct is only a subject of surmise, given the myriad of variables that affect settlements . . . . '[T]he mere probability that a certain event would have happened, upon which a claim for damages is predicated, will not support the claim or furnish the foundation of an action for such damages. [Citations.]'" (*Thompson v. Halvonik* (1995) 36 Cal.App.4th 657, 663; *Doe v. Salesian Soc.* (2008) 159 Cal.App.4th 474, 481 [plaintiff cannot controvert the moving party's declarations or evidence "based on speculation, imagination, guesswork, or mere possibilities"]; see *Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1058 [summary judgment

proper where plaintiff produced no evidence his ex-wife would have agreed to a settlement that included the terms he claims were negligently omitted].)

As to whether Namikas would have received a better outcome at trial, respondents produced Namikas's statement during his deposition that he did not know whether the trial court would have ordered him to pay less than $7,000 in spousal support. Respondents contend this "admission" shifted the burden to Namikas to introduce evidence of cognizable damages. (See *Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613.) Namikas responds that because he is not a legal expert, his statement was insufficient to shift the evidentiary burden. (Code Civ. Proc., § 437c, subd. (p)(2); see *Binder v. Aetna Life Ins. Co.* (1999) 75 Cal.App.4th 832, 840.) Even assuming he is correct, we are entitled under Code of Civil Procedure section 437c, subdivision (c) to consider "all of the evidence set forth in the papers." (*Villa v. McFerren* (1995) 35 Cal.App.4th 733, 749 [testimony produced by plaintiff, coupled with moving party's evidence, shifted burden of proof to plaintiff].) Namikas's opposing evidence cured any evidentiary gap in the moving papers by corroborating the speculative nature of his damages claim. (*Id.* at pp. 749-750.)

Namikas introduced (1) Mowrey's declaration and marital standard of living analysis, (2) Soudry's opinion that the use of the DissoMaster calculation resulted in a higher level of support than would have been obtained at trial, and (3) Judge Liebmann's order reducing spousal support in 2012. This evidence fell short of the showing of damage required to survive summary judgment. (See *Marshak, supra,* 72 Cal.App.4th at p. 1518.) To the extent this evidence implied that Namikas would have received a better outcome had he gone to trial, it failed to show "what that better outcome *would* have been." (*Ibid.*, italics added.)

Namikas is correct that the trial court would not have used the DissoMaster guidelines to calculate permanent spousal support. Unlike temporary spousal support orders, permanent support orders must be premised on an analysis of the factors set forth in section 4320. (*In re Marriage of Schulze* (1997) 60 Cal.App.4th 519, 525-528.) "Because dissolution of marriage is, in the mathematical sense, a negative-sum game

10

where each party will not have the same access to the whole of the marital property he or she had during the marriage, permanent support orders will usually be lower than temporary orders." (*Id.* at p. 525.)

"In ordering [permanent] spousal support, the trial court *must* consider and weigh all of the circumstances enumerated in [section 4320], to the extent they are relevant to the case before it. [Citations.] The first of the enumerated circumstances, the marital standard of living, is relevant as a reference point against which the other statutory factors are to be weighed. [Citations.] The other statutory factors include: contributions to the supporting spouse's education, training, or career; the supporting spouse's ability to pay; the needs of each party, based on the marital standard of living; the obligations and assets of each party; the duration of the marriage; the opportunity for employment without undue interference with the children's interests; the age and health of the parties; tax consequences; the balance of hardships to the parties; the goal that the supported party be self-supporting within a reasonable period of time; and any other factors deemed just and equitable by the court. [Citation.]" (*In re Marriage of Cheriton* (2001) 92 Cal.App.4th 269, 302-304, fns. omitted.)

Relying upon Mowrey's analysis, Namikas asserts Joanne needed only $7,738 per month to maintain the marital standard of living. Because she had undisputed monthly rental income of $3,000, Namikas claims that even if the trial court imputed no employment income to Joanne given her health issues, any spousal support order would have been no more than $4,738 per month. From this, he concludes the $7,000 settlement was at least $2,262 more than what he would have been ordered to pay following trial. Although this result is possible, it is not certain. It is one in a range of outcomes that could have occurred based on an analysis of the section 4320 factors.

Namikas's expert evidence failed to raise a triable issue because it focused on the marital standard of living without taking into account all of the relevant statutory factors or the broad discretion afforded the trial court in determining the weight to accord each factor. (See *In re Marriage of Smith* (1990) 225 Cal.App.3d 469, 475.) The marital standard of living "is not 'an absolute measure of reasonable need, but merely a "basis" or

11

reference point for determining need and support.' [Citation.]" (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 207.) The court must consider all of the relevant statutory factors. (*In re Marriage of Cheriton, supra,* 92 Cal.App.4th at pp. 302-304.) After weighing those factors, the court may "fix spousal support at an amount greater than, equal to or less than what the supported spouse may require to maintain the marital standard of living, in order to achieve a just and reasonable result under the facts and circumstances of the case." (*Marriage of Smith*, at p. 475.) In particular, "where the supporting party has the ability to pay, a trial court has discretion to award spousal support at a level above the actual marital standard of living. [Citation.]" (*Marriage of Cheriton,* at p. 308.)

Eight years after the settlement, Judge Liebmann found the balance of hardships favored Joanne. This imbalance was more evident in 2004, when Joanne was unemployed and undergoing treatment for substance abuse, while Namikas was earning more than $30,000 per month. Given this income discrepancy, Joanne's health and age (50), a trial court reasonably could have required Namikas to pay support at a level above the marital standard of living to give Joanne time to recover and become self-supporting after a 22-year marriage. Namikas produced no evidence suggesting the trial court "certainly" would have ordered him to pay less than the $7,000 settlement amount. (*Marshak, supra,* 72 Cal.App.4th at p. 1519.) Nor did he show that a lower support award necessarily would have resulted in a "better outcome," given the added cost of going to trial and his potential liability for Joanne's attorney fees. Indeed, Namikas agreed to the settlement, in part, because it avoided further litigation expenses, imputed $4,000 in income to an unemployed, long-term spouse with health issues, and resulted in after-tax support payments of $3,855 per month. Even in hindsight, these reasons do not appear unreasonable.

*Marshak* upheld the grant of summary judgment in a similar situation. After settling his dissolution proceeding, the plaintiff claimed his attorney negligently failed to object to both the overvaluation of his business accounts receivable and the undervaluation of the family residence. (72 Cal.App.4th at p. 1519.) The court

12

determined that even if the plaintiff could prove that the residence was worth more and that the receivables were worth less, it does not necessarily mean that "a judge would have entered judgment more favorable than that to which he stipulated. Plaintiff has not even intimated how he would establish [this result] with the certainty required to permit an award of damages." (*Ibid.*)

Finally, Judge Liebmann's order modifying spousal support in 2012 also failed to raise a triable issue. As the trial court pointed out, the reduction was based on a change of circumstances, i.e., Joanne's failure to undertake reasonable efforts to improve her financial situation after so many years. Judge Liebmann did not make any findings regarding what the support order should have been in 2004. He only considered what was appropriate in 2012. It is not logical to infer that a court would have made the same or similar order eight years earlier.

In sum, we agree with the trial court that Namikas did not produce evidence to justify a finding of triable issues of fact about whether, without any legal malpractice occurring, he would have received a more favorable settlement or outcome at trial. Nor does the record as a whole support a conclusion that causation questions remain about damages, based on any argument the settlement was excessive in light of all the variables and circumstances.[5]

### DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

PERREN, J.

We concur:

GILBERT, P. J.

YEGAN, J.

[5] Because we affirm the judgment, we need not address respondents' argument that tactical immunity insulated them from liability.

13

Rebecca S. Riley, Judge

Superior Court County of Ventura

_____

Michael A. Lotman for Appellant.

Nemecek & Cole, Jonathan B. Cole, Mark Schaeffer, Steve R. Segura for Respondents.

Filed 5/7/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| ALEXANDER NAMIKAS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>PAUL A. MILLER et al.,<br><br>    Defendants and Respondents. | 2d Civil No. B244685<br>(Super. Ct. No. 56-2011-00393530-<br>CU-BC-VTA)<br>(Ventura County)<br><br><br>ORDER CERTIFYING OPINION<br>    FOR PUBLICATION |

THE COURT:

The opinion in the above-entitled matter filed on April 14, 2014, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and IT IS SO ORDERED.