Filed 9/10/20  Sturm v. McDowell Forster Associates CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| TIMOTHY J. STURM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MCDOWELL FORSTER ASSOCIATES et al.,<br><br>    Defendants and Respondents. | B288399<br><br>(Los Angeles County<br>Super. Ct. No. BC591112)<br><br>ORDER MODIFYING OPINION<br><br>CHANGE IN APPELLATE JUDGMENT |

THE COURT:*

The above-entitled opinion filed on August 24, 2020 is modified as follows:

On pages 29 after the Disposition, delete "The Department is to recover its costs on appeal" and replace it with "Respondents are to recover their costs on appeal."

There is a change in the appellate judgment.

_____

\*      PERLUSS, P. J.            FEUER, J.            DILLON, J.**

\*\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 8/24/20  Sturm v. McDowell Forester Associates CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| TIMOTHY J. STURM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MCDOWELL FORSTER ASSOCIATES et al.,<br><br>    Defendants and Respondents. | B288399<br><br>(Los Angeles County Super. Ct. No. BC591112) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard E. Rico, Judge.  Affirmed.

Timothy J. Sturm, in pro. per.; Law Office of Cliff Dean Schneider, Cliff Dean Schneider, Tiffany Schneider; Law Offices of Michael C. Murphy and Michael C. Murphy for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith and H. Gilbert Jones for Defendants and Respondents.

Timothy Sturm appeals from a judgment entered after the trial court granted the summary judgment motion filed by attorneys Lonnie McDowell and McDowell Forster Associates (collectively, McDowell). Sturm sued McDowell for legal malpractice in connection with its representation of Sturm in prosecuting a legal malpractice action against Sturm's previous lawyers, who in turn represented Sturm in an administrative appeal and settlement relating to his termination from public employment. On appeal, Sturm contends (1) the trial court erred in sustaining McDowell's demurrer to four causes of action in Sturm's first amended complaint without leave to amend; (2) the court erred by denying Sturm's ex parte application to continue the hearing on McDowell's summary judgment motion; and (3) the court erred in granting summary judgment because McDowell did not meet its burden to prove there were no issues of triable fact. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Sturm's Employment and Disciplinary Proceedings*[1]

Sturm was employed by the Los Angeles County Probation Department (Department) from February 15, 1975 to June 3, 2010. In May 2008 Sturm was suspended for 10 days following an incident in 2007 when he accidentally struck the forehead of a ward at the juvenile offender facility where Sturm was working. Sturm appealed the suspension to the Los Angeles County Civil

---

[1] The factual background is taken from the evidence submitted by the parties in connection with McDowell's motion for summary judgment. We indicate where the evidence is in dispute.

Service Commission (Commission). After a hearing on July 1, 2009 at which Sturm was represented by a lawyer provided by his union, the Commission sustained the suspension.

On April 7, 2009 Sturm was involved in a more serious incident where he forcibly removed a ward from a bathroom stall. In his opposition separate statement, Sturm admitted his conduct "could be interpreted as a 'technical' violation" of Department regulations that required an officer to request assistance during an escalated encounter and obtain approval before using force. On March 31, 2010 the Department issued Sturm a notice of intent to discharge for misuse of force and failure to exercise sound judgment.[2] The Department set a *Skelly*[3] hearing for May 19, 2010.

Sturm consulted his nephew Derek Newman, who was an attorney, concerning the threat of discharge, and Newman referred Sturm to Newman's law partner, John Du Wors, who specialized in employment matters. Sturm met with Du Wors on April 12, 2010 to discuss the matter, but Sturm did not request Du Wors represent him.

The day before the *Skelly* hearing, Sturm contacted the Department to request permission to record the hearing and examine the Department's files. The Department denied Sturm's

---

[2]     The notice of intent to discharge was based on the 2009 incident, but it noted Sturm had been previously disciplined for inappropriate use of force and failure to follow procedures in connection with the 2007 incident.

[3]     In *Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, the Supreme Court held a civil service employee has a due process right to be informed and respond to allegations prior to disciplinary action by his or her employer.

request. Sturm then contacted Du Wors and asked Du Wors to represent him at the hearing. Du Wors responded that he could not properly prepare and appear on behalf of Sturm the next day, and he advised Sturm to request a continuance. Sturm did not request a continuance and did not appear at the hearing. Because the notice of intent to discharge was not opposed, the Department terminated Sturm's employment effective June 4, 2010.

B.    *Appeal of the Termination and Settlement*

In January 2011 Sturm retained Newman, Du Wors, and Newman's law firm (collectively, Newman) to represent him in an appeal of his termination to the Commission (the termination appeal). After a three-month continuance to accommodate Du Wors's availability, the Commission set a hearing on Sturm's appeal for July 11, 2011. On the day of the hearing, Du Wors and the Department's attorney negotiated a settlement, the outline of which was put on the record at the hearing.[4] The terms of the settlement included the Department rescinding its termination and reinstating Sturm effective July 12, 2011; Sturm agreeing to retire by September 30, 2011; payment of four months and 10 days of back pay and benefits; future pay until Sturm's retirement on September 30, 2011 with benefits determined

---

[4]    Prior to negotiating the settlement, the hearing officer heard argument on the scope of the evidence to be presented at the hearing. Sturm sought to introduce evidence related to the 2007 incident and Sturm's 2008 suspension, which the Department opposed. The hearing officer excluded the evidence unless there was testimony Sturm's 10-day suspension in 2008 was a factor in his 2009 suspension.

4

"according to county code"; and a letter of commendation for Sturm's lengthy service.

Over the next several months, Du Wors and the Department's attorney finalized a written settlement agreement, which Sturm signed on November 3, 2011. The settlement agreement provided the Department would rescind Sturm's discharge effective June 3, 2010 and Sturm would be "made whole" for four months and 10 days of service from June 3 to October 12, 2010 "in accordance with applicable provisions of County Code." Sturm would be reinstated to his prior position effective July 12, 2011; however, "Sturm's assignment from his reinstatement on July 12, 2011, until his retirement from the Department and County service on September 30, 2011, will be at the discretion of the [Department]." Sturm would receive a letter of commendation upon retirement. Sturm agreed to withdraw his administrative appeal and waive future administrative and judicial remedies relating to his discharge.

By early 2012 Sturm believed the Department and its retirement benefits administrator, the Los Angeles County Employees Retirement Association (LACERA), were refusing to honor the settlement agreement. LACERA delayed paying Sturm retirement service credit for the four months and 10 days for which he was awarded back pay under the settlement agreement (June 3, 2010 through October 12, 2010), and it rejected Sturm's demand it pay him for the entire 15 months from the date of Sturm's discharge to his retirement (from June 3, 2010 through September 30, 2011). Sturm requested Du Wors's assistance in enforcing the settlement agreement, to which Du Wors responded, "We would be pleased to assist you in enforcing the agreement by contacting the opposing lawyer

5

and/or initiating arbitration.  But I have two concerns.  First, you expressed dissatisfaction with our services. . . .  [¶]  Second, you have a substantial unpaid balance with our firm.  We cannot work for free.  If you pay the outstanding invoice—and you believe that we are the best firm for you—then we'd be pleased to assist you in enforcing the settlement agreement."

On March 16, 2012 Sturm filed a client petition for arbitration with the Los Angeles County Bar Association, disputing fees of more than $30,000 billed by Newman.

## C.     *Fee Arbitration and Malpractice Lawsuit*

In late 2012 Sturm engaged McDowell to represent him in the fee arbitration against Newman, to enforce the settlement agreement against the Department, and to represent him in a potential malpractice action against Newman.  The parties' retainer agreement stated, "Client understands that no representation has been made that a cause of action for [l]egal [m]alpractice against John DuWors, DuWors & Newman, and/or Newman & Newman has been established.  Attorney and [c]lient will evaluate said [l]egal [m]alpractice claim to determine whether or not to go forward.  Attorney is only filing said complaint now to ensure compliance with the [s]tatute of [l]imitations in this case."  The retainer agreement expressly excluded "[r]e-litigation of the underlying case in this action."

### 1.     *Newman fee arbitration*

The attorney fee arbitration took place on January 11, 2013.  Newman sought $30,491.15, consisting of $40,491.15 in billed fees, costs, and interest, less a $10,000 retainer paid by Sturm.  Sturm, represented by McDowell, contended Sturm owed

6

nothing beyond the retainer because of Newman's inadequate performance and improper billing. In its statement of decision, the arbitrator found "the billing statements contain some improper, excessive, and duplicative charges" and Newman was not entitled to interest, and held Sturm owed the firm $17,799.47, a reduction of 43 percent from what Newman claimed. With respect to the underlying representation, the arbitrator found the Department's "offer of reinstatement—the result of Wors' discussion with [the Department attorney] about the strong points in Sturm's case—was an outstanding accomplishment especially since it was achieved so early in the case when the cost of representation was still relatively low." "The terms of the settlement agreement were also impressive," and the "nonmonetary settlement benefits were also of considerable value." Although the terms of the written settlement "varied slightly" from the oral agreement by providing for back pay from June 3 to October 12, 2010 (instead of four months and 10 days), the variance favored Sturm.[5] The arbitrator also found Du Wors properly counseled Sturm to settle the termination appeal because Sturm's asserted goal to expose corruption in the Department could not be achieved at the Commission hearing. The arbitrator further found the fact "LACERA and the Department have refused to honor the settlement agreement does not affect the value of the [f]irm's work. . . . [T]he [f]irm is not to blame for the intransigence of LACERA and the Department." The arbitrator made further findings Newman did not unreasonably seek a continuance of the

---

[5]    It is not clear what variation the arbitrator was referencing. By our math, back pay from June 3 to October 12, 2010 is the equivalent of payment for four months and 10 days.

7

Commission hearing and did not unjustifiably delay in concluding the settlement agreement. To the contrary, Sturm delayed two months after the hearing "to search for ways to get out of it and attempted to retain other attorneys to accomplish that objective."

 2. *Malpractice action against Newman*

On October 12, 2012 McDowell filed a complaint on behalf of Sturm against Newman (*Sturm v. John DuWors et al.* (Super. Ct. Los Angeles County, 2012, No. BC 493608) (*Newman* action). The operative first amended complaint asserted causes of action for legal malpractice and breach of fiduciary duty, alleging Newman failed adequately to prepare for the Commission hearing, improperly delayed the Commission hearing and execution of the settlement agreement, misled Sturm about the scope and nature of the representation, and failed to perform due diligence in ascertaining whether LACERA or the Department had the power to bind the Department as to payment of benefits.

On May 23, 2014 Newman filed a motion for summary judgment in which it argued Sturm was unable to prove a breach of the standard of care or to show damages and causation. McDowell submitted with its opposition the declaration of attorney Lawrence Jacobson as an expert on legal malpractice. Jacobson stated in his declaration, "[I]t appears undisputed that in order to be enforceable the settlement agreement had to include and be consented to and signed by [LACERA]. Failing to include a necessary party either by inadvertence, oversight or a failure to properly research the law to determine who the necessary parties would be, falls below the standard of care." Jacobson also opined Du Wors "fell below the standard of care by not familiarizing himself with the specific statutory provisions

8

relating to a Probation Officer in Los Angeles County. Any expert in any highly specified area would be expected to be familiar with who would be the necessary parties to a settlement agreement in a dispute within that area of expertise."

Newman submitted with its reply the declaration of Dennis Carroll, the Department executive responsible for Sturm's discipline for the 2009 incident. Carroll declared that had Sturm not settled with the Department, Carroll was prepared to testify at the Commission hearing that Sturm's termination was appropriate. Carroll stated, "If Mr. Sturm had not accepted our 'last, best and final' offer, we were prepared to proceed to a hearing on the merits and we were confident the hearing officer would uphold the decision to discharge Mr. Sturm." Carroll further stated, "I have reviewed and approved settlement agreements in the past and LACERA is never a party and does not need to be. This is true even when the settlement agreements contemplate a retroactive retirement, which is not uncommon." Newman also submitted the declaration of attorney Daniel Carmichael, who negotiated the settlement on behalf of the Department. Carmichael declared, "[T]he Department would never have agreed to [full back pay] as part of a settlement because it does not represent a compromise on the employee's part. (The best the employee can do at the hearing is obtain reinstatement and full back pay, so there is almost never any reason to agree to that in a settlement in general.) And, to be clear, the Department would not have agreed to it in Mr. Sturm's case because we believed we were likely to prevail if the hearing were actually held." Carmichael believed the Department's case for Sturm's termination was strong because Sturm had admitted he violated Department policy, refused to take responsibility for

9

his actions, and argued his actions were justified. Carmichael also stated, like Carroll, "I have negotiated and reviewed dozens of settlement agreements and LACERA is never a party and does not need to be. . . . The date of retirement for LACERA is the date when an employee submits a letter to LACERA indicating he is retiring."

After a hearing, on August 20, 2014 the trial court[6] issued a five-page order granting the summary judgment motion. The court found, "The admissible evidence contained in [Sturm's] declaration does not establish causation or damages. . . . [¶] [Sturm] has not presented any evidence of what a reasonable settlement would have been or that such allegedly reasonable terms would have been agreed to by the County. [Sturm] cannot demonstrate that but for the negligence of [d]efendants, the result of [the Commission] hearing would have resulted in a higher settlement with the County or a better result had [Sturm] proceeded with his hearing." The court also found Jacobson's expert declaration in opposition was "largely without foundation." "For example, [Jacobson] opines without any foundation that the settlement agreement in issue is not an enforceable settlement agreement. . . . Nothing in the evidence suggests that the signed settlement agreement is, in fact, unenforceable; the expert's statement is conclusory. Moreover, Plaintiff's expert relied upon nothing other than various unverified pleadings in reaching his

---

[6] Judge Mitchell L. Beckloff presided over the *Newman* action.

opinions." The court entered judgment for Newman on September 9, 2014.[7]

D. *Malpractice Lawsuit Against McDowell*
    1. *Complaint and demurrer*

On August 12, 2015 Sturm, representing himself, filed this action, asserting causes of action against McDowell for legal malpractice, breach of fiduciary duty, fraud and concealment, fraud and intentional misrepresentation, and intentional infliction of emotional distress (IIED). After the trial court[8] sustained McDowell's demurrer with leave to amend, Sturm filed a first amended complaint asserting the same five causes of action with more detailed allegations. McDowell again demurred to the second through fifth causes of action on the same grounds as the first demurrer.

On June 27, 2016 the trial court sustained the demurrer to the second through fifth causes of action without leave to amend. The court held the second cause of action "pleads no breach of duty other than the alleged failure to prosecute Plaintiff's three claims properly. . . . As such, the alleged breach of fiduciary duty action is subsumed in the legal malpractice claim." As to the third and fourth causes of action, the court held Sturm failed to state additional facts "to establish the necessary how, when, where, and to whom" to support his fraud claims. Finally, as to the fifth cause of action for IIED, the court found Sturm failed to

---

[7] Sturm appealed from the judgment, but the appeal was dismissed for failure to procure the record on appeal. (Rules of Court, rule 8.140(b).)

[8] Judge Richard E. Rico presided over this action.

11

allege sufficiently intentional or affirmative misconduct or any injury other than the financial loss from his attorney's malpractice.

2. *McDowell's summary judgment motion and Sturm's ex parte application for a continuance*

On September 11, 2017 McDowell filed a motion for summary judgment on the remaining claim for legal malpractice. McDowell's principal argument was that Sturm could not show causation because he could not "demonstrate to a legal certainty *either* that his underlying claim against his former attorneys was viable, *or* that [McDowell's] alleged negligence caused him damage." McDowell filed a separate statement, exhibits, and declarations from Lonnie McDowell and Linda Savitt, an expert on legal malpractice. McDowell noticed the hearing for December 6, 2017.

On November 8, 2017, two weeks before Sturm's opposition was due, Sturm filed an ex parte application to continue the hearing from December 6, 2017 "to May, 2018, or later," or in the alternative, to shorten the time in which to hear a motion to continue the hearing. In his supporting declaration, Sturm explained his grounds for a continuance: "[T]rial in my related case, Case No. MC025485 has been continued to March 16, 2018, due to scheduling conflicts of attorneys and to incomplete discovery. . . . [¶] 3. . . . [¶] 4. . . . [¶] 5. . . . [¶] 6. . . . I have been focusing most of my time and effort trying to retain my counsel by responding to and writing motions, appearing in court, or looking for alternate counsel and completing additional inspection demands, motions to compel and preparing for and conducting additional depositions in this case and the related

12

case."[9]  Sturm added, "I still have a few witnesses yet to depose. If I prevail in the related case, I have a greater chance of retaining an attorney for this instant malpractice case.  If I retain counsel in this case in the future, the attorney may want to depose additional witnesses in preparation for trial."  Sturm did not identify any particular witnesses or explain what testimony they would provide.

Sturm also declared, "[T]he crux of [McDowell's] motion for summary judgment is their belief that if I cannot obtain a better result at trial [then] my case should be dismissed.  Obviously, resolution of my related case will answer that concern.  For that reason, I am asking the Court to continue the motion for summary judgment in this case from December 6, 2017, to a date in May, 2018.  That will give me adequate time to focus on and prepare for trial in the related case and a small window of time to prepare the opposition to the motion for summary judgment in this case."

On November 8, 2017, the trial court granted Sturm's alternative request for relief and set a hearing on Sturm's application for a continuance for December 1, 2017.  McDowell filed an opposition to Sturm's application, arguing Sturm had

---

[9]  On our own motion, we take judicial notice of the operative third amended complaint and trial court docket in *Sturm v. County of Los Angeles Department of Probation* (Super. Ct. Los Angeles County, 2015, No. MC025485) (*Dept. of Probation* action).  (Evid. Code, § 452, subd. (d).)  In that case Sturm asserts claims against the Department for breach of contract and rescission of the settlement agreement.  Although Sturm filed a notice of related case in both this action and in the *Dept. of Probation* action, the dockets do not reflect an order relating the actions.

conducted minimal discovery during the two years the case had been pending and Sturm had been on notice for five months of the December 6 hearing date. McDowell also argued Sturm did not identify the additional discovery he sought other than Sturm's conclusory statement he still had "a few witnesses yet to depose."

On December 1, 2017 the trial court denied Sturm's requested continuance, finding "[t]he moving papers fail to discuss any supportive legal authority. Rather, [Sturm] contends that this action should be set *after* trial in the related case (MC025485) due to 'scheduling conflicts of attorneys and to incomplete discovery.' . . . This action was filed in August 2015 and [Sturm] should not wait until a summary judgment/adjudication motion to conduct key discovery." Although the court denied Sturm's request to continue the hearing to May 2018, it continued the hearing to January 3, 2018 and allowed Sturm until December 18, 2017 in which to file his opposition.

Sturm filed his opposition on December 18, supported by his own declaration and exhibits. In his declaration Sturm stated why he believed McDowell was negligent in its handling of the *Newman* action and why Sturm was entitled to more back pay than what he obtained under the settlement agreement. But Sturm failed to submit any declarations or documents to support his conclusory statements McDowell was negligent, nor did he present any evidence why he would have achieved a better result in the termination appeal had Newman provided adequate representation. For example, Sturm declared, "The assertion by McDowell that I did not attend the Skelly hearing and therefore, failed to make a record of my potential defenses is false. . . . The

14

Skelly hearing was going to be a kangaroo court. I had been collecting documents since 2007 that proved that I was being framed and was being denied due process. I have volumes of evidence to prove my case against the County as well as my case against the Defendants."

McDowell filed a reply memorandum and evidentiary objections on December 22, 2017.[10] Sturm filed an unauthorized surreply on December 27.

### 3. *Trial court ruling*

After a hearing, on January 4, 2018 the trial court issued a five-page ruling granting McDowell's summary judgment motion. The court identified several defects in Sturm's opposition: Sturm failed to provide any authentication for most of the documents submitted with his opposition; Sturm relied exclusively on his own declaration to refute the declarations of McDowell and Savitt but failed to establish a foundation for the exhibits cited in his opposition; Sturm's testimony that McDowell failed to research whether LACERA was a necessary party was speculative and lacked personal knowledge; and Sturm's separate statement was defective under California Rules of Court, rule 3.1350(f) in that it

---

[10] Although the trial court at the hearing made general statements about Sturm's exhibits and portions of his declaration being inadmissible, it did not specifically rule on McDowell's evidentiary objections. Where the trial court fails to rule on evidentiary objections in the context of a summary judgment motion, on appeal we presume the objections have been overruled, with the objector having the burden to renew its objections in the Court of Appeal. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 534.) Neither party asserts an argument on appeal relating to McDowell's evidentiary objections.

15

did not include McDowell's moving evidence and did not include specific cites to Sturm's evidence by page and line numbers. Based on these defects, the trial court found Sturm's "responsive papers carry no evidentiary value."

The trial court found McDowell met its burden to show Sturm could not establish a "proximate causal connection between the negligent conduct and the resulting injury" necessary to prove malpractice. As framed by the complaint, Sturm alleged McDowell failed properly to prosecute the fee arbitration against Newman; enforce the settlement agreement with the Department; and prosecute the *Newman* action. As to the fee arbitration, the court found the evidence showed McDowell obtained a favorable outcome in the 43 percent reduction of the fees claimed by Newman, and Sturm's assertion McDowell was unprepared was speculative and lacked merit. As to the settlement agreement, the court found Sturm had received the funds specified in the agreement with back pay, and his "unsupported belief that he was shortchanged do[es] not represent a disputed material fact." Finally, with respect to the *Newman* action, the court found "the evidence establishes that [Sturm] failed to appear at the underlying termination hearing against the county, limiting the grounds upon which [he] could argue. . . . Further, there can be no possible damages arising from [McDowell's] effort to settle the underlying malpractice claim against Newman." The court granted the motion and entered judgment for McDowell on January 11, 2018.

Sturm timely appealed.

16

## DISCUSSION

A.  *The Trial Court Did Not Err in Sustaining the Demurrer to the First Amended Complaint Without Leave to Amend*

Sturm contends the trial court erred in sustaining McDowell's demurrer as to four of the five causes of action alleged in the first amended complaint because he had pleaded one viable claim, and therefore "the [c]ourt was required to overrule the general demurrer and allow all of the causes of action to proceed." Sturm is fundamentally mistaken as to the nature of demurrer, which countenances disposition of some but not all claims in a complaint. Rules of Court, rule 3.1320(b) specifically addresses a "[d]emurrer not directed to all causes of action," and provides, "A demurrer to a cause of action may be filed without answering other causes of action." Rules of Court, rule 3.1320(a) states, "Each ground of demurrer. . . must state whether it applies to the entire complaint, . . . *or to specified causes of action* or defenses." (Italics added.) Here, consistent with the Rules of Court, McDowell demurred only to the second, third, fourth, and fifth causes of action of the first amended complaint. McDowell did not challenge, and the trial court did not address, the sufficiency of Sturm's first cause of action for legal malpractice.

Sturm's reliance on *Mills v. Mills* (1956) 147 Cal.App.2d 107 is misplaced. Although Sturm accurately cites the language in *Mills* that "[a] general demurrer to a complaint containing more than one count should be overruled if there is a good count stating a cause of action," that sentence is in the context of the Court of Appeal's conclusion that the trial court erred in entering a judgment of dismissal where two viable counts remained. (*Id.*

17

at p. 124.) Here, the trial court correctly allowed the viable claim for legal malpractice to proceed.

Sturm does not assert any argument in his opening brief or reply concerning the sufficiency of the dismissed causes of action, nor does Sturm argue he was entitled to leave to amend. Sturm has therefore forfeited these issues. (*Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 (*Tiernan*) ["Plaintiff has not raised this issue on appeal, however, and it may therefore be deemed waived."]; *Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1136 (*Sierra Palms*) [appellant forfeited challenge to issue not raised on appeal].)

B.    *The Trial Court Did Not Abuse Its Discretion in Denying Sturm's Request for a Continuance*

Sturm contends the trial court erred in denying his application to continue the hearing on McDowell's summary judgment motion from December 6, 2017 to May 2018 or later because he demonstrated good cause for a continuance under Code of Civil Procedure section 437c, subdivision (h),[11] and the court's general discretion to grant a continuance. The trial court did not abuse its discretion, especially in light of its approximately one-month extension of Sturm's deadline to file an opposition (continuing the hearing from December 6, 2017 to January 3, 2018).

---

[11]    All further undesignated statutory references are to the Code of Civil Procedure.

Section 437c, subdivision (h), provides, "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just." The party opposing summary judgment who seeks a continuance must show: "'"(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional time is needed to obtain these facts."'" (*Jade Fashion & Co., Inc. v. Harkham Industries, Inc.* (2014) 229 Cal.App.4th 635, 656 (*Jade Fashion*) [affirming trial court denial of continuance where declaration supporting request did not show specific facts that could be obtained by deposing witness or why facts were essential to opposition]; cf. *Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 643-644 (*Chavez*) [trial court abused its discretion in denying request for continuance to depose witness where "[i]t was apparent from the summary judgment briefing that [the witness] likely possesse[d] unique knowledge regarding the primary dispute"].) "'The party seeking the continuance must justify the need, by detailing both the particular essential facts that may exist and the specific reasons why they cannot then be presented.'" (*Chavez*, at p. 643; accord, *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 254 ["'It is not sufficient under the statute merely to indicate further discovery or investigation is contemplated. The statute makes it a condition that the party moving for a continuance show "facts essential to justify opposition may exist."'"].) We review a trial court's decision whether to grant a continuance under

19

section 437c, subdivision (h), for an abuse of discretion. (*Jade Fashion*, at p. 656; *Chavez*, at p. 643.)

Sturm's declaration in support of his request for a continuance failed to meet the requirements of section 437c, subdivision (h). Sturm stated in his declaration he had "a few witnesses to depose" and if he could retain an attorney in the future, "the attorney may want to depose additional witnesses in preparation for trial." Sturm did not identify the witnesses he sought to depose, the facts he believed the depositions would reveal, or why the facts were essential to his opposition. [12] Further, Sturm failed to explain why he was not able to obtain the necessary discovery during the two years the action was pending. (See *Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038 ["In exercising its discretion the court may properly consider the extent to which the requesting party's failure to secure the contemplated evidence more seasonably results from a lack of diligence on his part."].)

Where a party does not meet the requirements of section 437c, subdivision (h), "the court must determine whether the party requesting the continuance has nonetheless established good cause therefor. That determination is within the court's discretion." (*Lerma v. County of Orange* (2004) 120 Cal.App.4th 709 716; accord, *Chavez, supra*, 238 Cal.App.4th at p. 643.) The trial court did not abuse its discretion finding no good cause under this more general standard. Sturm asserted in his

---

[12] Although Sturm's attorney at oral argument asserted Sturm needed a continuance to retain his own expert or depose McDowell's expert, nowhere in Sturm's request for a continuance did he state he needed a continuance for this purpose, only generally stating he had additional witnesses to depose.

20

declaration he needed a continuance because of the delay in the trial of the *Dept. of Probation* action to March 2018. Specifically, Sturm asserted he was "overwhelmed" in his trial preparation, had a dispute with his attorney in that case, and if he prevailed in the *Dept. of Probation* action, he had a better chance of retaining an attorney and prevailing in this action. Sturm made no showing in his application as to what the *Dept. of Probation* action involved, why a result in that action would affect this action, or why he should be allowed to delay this action so he could litigate the *Dept. of Probation* action first. The one-year continuance of the *Dept. of Prob*ation action should have allowed Sturm more, not less, time to prepare his opposition to McDowell's summary judgment motion, and Sturm's breakdown with his attorney in the *Dept. of Probation* action is not relevant to this action. Sturm's assertion a win in the *Dept. of Probation* action would help him find a new attorney in this action, who in turn might seek discovery, is highly speculative, as is Sturm's assertion he would have a better chance of prevailing in this action if he could first prevail in the *Dept. of Probation* action.

C.      *The Trial Court Did Not Err in Granting McDowell's*
        *Motion for Summary Judgment*

Sturm contends the trial court erred in granting McDowell's motion for summary judgment because there was a triable issue of fact whether McDowell was negligent in prosecuting the *Newman* action, and in particular, opposing Newman's motion for summary judgment.[13] McDowell responds

---

[13]     On appeal, Sturm does not address the trial court's rulings concerning McDowell's representation of Sturm in the fee

21

that it is irrelevant whether any triable issue exists as to its negligence because Sturm cannot show causation in that he cannot prove he would have obtained a more favorable outcome but for McDowell's negligence. McDowell has the better argument.

1. *Standard of review on summary judgment*

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Valdez v. Seidner-Miller, Inc.* (2019) 33 Cal.App.5th 600, 607.) A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (§ 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*); *Quidel Corp. v. Superior Court* (2019) 39 Cal.App.5th 530, 537 (*Quidel*).) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar*, at p. 850; *Quidel*, at p. 607.)

---

arbitration or in connection with enforcing the settlement agreement. Any challenge to these rulings is therefore waived. (*Tiernan, supra*, 33 Cal.3d at p. 216, fn. 4; *Sierra Palms, supra*, 19 Cal.App.5th at p. 1136.) Accordingly, we consider only Sturm's contention McDowell committed malpractice in prosecuting the *Newman* action.

We review the trial court's ruling on a motion for summary judgment de novo.  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; *Quidel, supra,* 39 Cal.App.5th at p. 537.)  "'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.'"  (*Hampton*, at p. 347; accord, *Quidel,* at pp. 537-538.)

2.    *Applicable law*

The elements of a cause of action for legal malpractice are "(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence."  (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199; accord, *Kumaraperu v. Feldsted* (2015) 237 Cal.App.4th 60, 66.)  "'In the legal malpractice context, the elements of causation and damage are particularly closely linked.'"  (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1582 (*Namikas*).)  "The plaintiff must prove, by a preponderance of the evidence, that but for the attorney's negligent acts or omissions, he would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred."  (*Ibid.*; *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241; accord, *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1091 (*Masellis*).)

"'It is not enough for [the plaintiff] to simply claim . . . that it was possible to obtain a better settlement or a better result at trial.  The mere probability that a certain event would have

23

happened will not furnish the foundation for malpractice damages.'" (*Namikas, supra*, 225 Cal.App.4th at p. 1582; *Masellis, supra*, 50 Cal.App.5th at pp. 1091-1092.) Rather, "'"[d]amage to be subject to a proper award must be such as follows the fact complained of as a legal certainty." [Citations.]' In other words, the plaintiff must show that '[he] would certainly have received more money [or had to pay less] in settlement or at trial.'" (*Namikas*, at p. 1582.)

"The requirement that a plaintiff need prove damages to 'a legal certainty' is difficult to meet in any case. It is particularly so in 'settle and sue' cases." (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 166; accord *Thompson v. Asimos* (2016) 6 Cal.App.5th 970, 990-991.) "'[T]he amount of a compromise is often "an educated guess of the amount that can be recovered at trial and what the opponent was willing to pay or accept. . . . Thus, the goal of a lawyer is to achieve a 'reasonable' settlement, a concept that involves a wide spectrum of considerations and broad discretion"'" (*Namikas, supra*, 225 Cal.App.4th at p. 1583*; Barnard v. Langer* (2003) 109 Cal.App.4th 1453, 1462-1463 & fn. 13 [affirming grant of nonsuit where trial court found plaintiff failed to present "more than a wish list of damages, unsupported by evidence that the [defense] would have settled for more, or by expert testimony to show that [the plaintiff's] amounts could have been recovered had the case been tried"].)

Although causation is ordinarily a question of fact for the jury, "[i]n legal malpractice claims, the absence of causation may be decided on summary judgment 'only if, under undisputed facts, there is no room for a reasonable difference of opinion.'" (*Namikas, supra*, 225 Cal.App.4th at p. 1583 [affirming summary judgment for defendant attorneys in legal malpractice case

24

following settlement of family law case because plaintiff husband could not establish he would have obtained a more favorable result through settlement or litigation than he achieved in a marital settlement agreement in light of ex-wife's declaration stating she would not have accepted a lower settlement amount].)

      3.     *Sturm failed to show he could have obtained a more favorable resolution of the underlying termination appeal*

Sturm contends on appeal there is a triable issue of fact whether McDowell was negligent in its handling of the *Newman* action, specifically, by its preparation of an inadequate expert declaration. But to prevail on its summary judgment motion, McDowell only had to show that Sturm could not prove one element of his malpractice claim. (§ 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 853.) McDowell met this burden by showing Sturm could not prove causation, that is, Sturm could not show he would have achieved a more favorable settlement or judgment in the termination appeal absent Newman's negligence, and in turn, Sturm could not show he would have achieved a better result in his malpractice claim against Newman in the *Newman* action absent McDowell's negligence. (*Masellis, supra*, 50 Cal.App.5th at p. 1091; *Namikas, supra*, 225 Cal.App.4th at p. 1582.) In other words, even if Newman and McDowell were negligent in their handling of the termination appeal and the *Newman* action, respectively, Sturm could not have achieved a better result in either action. McDowell met his burden; Sturm did not.

McDowell presented competent evidence Sturm could not have achieved a better result in the termination appeal than the terms of the settlement agreement. Carroll, the Department

employee responsible for Sturm's discipline, declared the settlement embodied "our 'last, best and final'-offer," and had Sturm not agreed to the settlement, the Department would have proceeded to the Commission hearing, where Carroll would have testified Sturm's termination was appropriate.  Carroll stated he was "confident the hearing officer would uphold the decision to discharge Mr. Sturm."  Carmichael, the Department's lawyer who negotiated the settlement, stated in his declaration, "[T]he Department would never have agreed to [full back pay] as part of a settlement because it does not represent a compromise on the employee's part.  (The best the employee can do at the hearing is obtain reinstatement and full back pay, so there is almost never any reason to agree to that in a settlement in general.)."  Carmichael stated the Department believed it would prevail at trial because Sturm had admitted to violating the Department's policies regarding use of force.  Both Carmichael and Carroll stated LACERA did not need not be included as a party to a settlement with the Department, and LACERA had never been included in a settlement.

McDowell also submitted the statement of decision from the fee arbitration, in which the arbitrator found the Department's "offer of reinstatement—the result of Wors' discussion with Carmichael about the strong points in Sturm's case—was an outstanding accomplishment," the "terms of the settlement agreement were also impressive," and the "nonmonetary settlement benefits were also of considerable value."  The arbitrator also found the failure of LACERA and the Department "to honor the settlement agreement does not affect the value of the [f]irm's work."

Savitt opined in her expert declaration that based on her review of the records of the termination appeal and *Newman* action, "Whether to settle the case or proceed with a hearing at the Civil Service Commission level is clearly a judgment call. Based on Sturm's April 13, 2010 e-mail to Derek Newman (Du Wors' partner), wherein he states:  'In this case, I have done something wrong' and 'I planned on leaving this year or next anyway' and expressing his desire to retain his pension (NDW 001963), a reasonable attorney would have tried to settle Mr. Sturm's case because of his recognition that he had done something wrong (as apparently also testified to at his deposition in the Du Wors matter), his lack of damages due to his intended retirement, and because of the unpredictability of the outcome of the appeal before the Civil Service Commission."

Lonnie McDowell stated in his declaration, "One of the major problems we had in the underlying matter, which went and goes directly to causation (*i.e.*, both in the underlying case against Newman and here), is that Plaintiff did not appear at the hearing on his termination on May 19, 2010, as noted in the . . . [n]otice of [d]ischarge. . . .  As a result, Plaintiff failed to make a record of his potential defenses and much of the evidence on which he might have relied.  Therefore, the grounds for any potential appeal of his termination were limited, and we were severely restricted in making any such appeal."

Based on this evidence McDowell met its affirmative burden to show Sturm could not have obtained a better settlement with the Department, nor could he have obtained a better outcome had he rejected the settlement and proceeded to the Commission hearing.  And because Sturm could not have prevailed in the *Newman* action due to a failure to show

27

causation there, he cannot show that but for McDowell's negligence in opposing Newman's judgment motion, Sturm could not have obtained a better outcome in this action either.

The burden therefore shifted to Sturm to present admissible evidence that but for Newman's negligence in the underlying termination appeal, the Department would have offered more in settlement or Sturm could have received a more favorable result at a hearing. (§ 437c, subd. (p)(1); *Aguilar, supra*, 25 Cal.4th at p. 850; *Quidel, supra*, 39 Cal.App.5th at p. 537.) Sturm failed to carry this burden. He submitted a defective separate statement and conclusory declaration supported by documents that were not authenticated, lacked foundation, and did not corroborate his testimony. Moreover, although Sturm's separate statement and declaration addressed Newman's negligence and the Department's alleged noncompliance with the settlement agreement, Sturm did not offer evidence of even a conclusory nature that he could have achieved a better outcome. Nor does Sturm offer any competent evidence the failure to include LACERA as a party to the settlement, as argued by Sturm, had any effect on enforceability of the settlement agreement. Finally, whether or not the Department breached the settlement agreement is not a material issue bearing on whether Sturm was damaged by his lawyers' negligence in entering into the settlement.

28

## DISPOSITION

The judgment is affirmed.  The Department is to recover its costs on appeal.

FEUER, J.

We concur:

PERLUSS, P. J.

DILLON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.