Filed 6/9/21  Vorzimer v. Berkowitz CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| JOHN VORZIMER et al., | B304603 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC670628) |
| v. | |
| STEVEN BERKOWITZ et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of Los Angeles County, Stephanie M. Bowick, Judge.  Affirmed.

Parker Mills, David B. Parker and Steven S. Wang for Plaintiffs and Appellants.

Wingert Grebine Brubaker & Juskie, Andrew A. Servais, Colin H. Walshok and Amy L. Simonson for Defendants and Respondents Steven Berkowitz, Law Offices of Steven Berkowitz, A.P.C., The Berkowitz Law Group, P.C., and The Kadish Law Group, P.C.

Murphy, Pearson, Bradley & Feeney, James A. Murphy, Kristin L. Iversen and Joseph S. Leveroni for Defendant and Respondent Glassman, Browning, Salesman & Jacobs, Inc.

———————————

This is an action for legal malpractice. Appellants John and Samantha Vorzimer (Vorzimers) were clients of respondents Steven Berkowitz and his two successor law firms (Berkowitz). As with all such actions, we start with the underlying litigation, which itself consists of two lawsuits. In a nutshell, the Vorzimers bought Barbara Behm's property at a foreclosure sale. Behm turned around and sued the Vorzimers and her own lender, Cervenka & Lukes Mortgage Corporation (C&L), alleging a conspiracy among them to induce her to take out a loan on terms they knew would force her into foreclosure so the Vorzimers could buy her property. The conspiracy action went to trial, resulting in a $30 million verdict against the Vorzimers. Post-verdict, the parties settled the action. Behm then filed a second lawsuit, alleging the Vorzimers had breached the terms of the settlement agreement. The Vorzimers, in turn, sued Berkowitz, their attorney of record. The Vorzimers' First Amended Complaint alleges two instances of malpractice: 1) negligence in the defense of Behm's original conspiracy lawsuit brought against them and lender C&L; and 2) negligence in drafting the settlement agreement for that litigation, which the Vorzimers contend made them vulnerable to the second lawsuit for breach of the settlement agreement. The Vorzimers appeal from the judgment of dismissal entered after the trial court granted summary judgment in favor of respondents Steven Berkowitz and the Kadish Law Group, and appeal from the stipulated judgment

2

entered in favor of respondent Glassman, Browning, Saltsman and Jacobs, Inc.[1]

Appellants contend the trial court erroneously found the legal malpractice action was a "settle and sue" action and applied an incorrect, higher standard of proof to the Vorzimers as plaintiffs. They also contend they raised triable issues of material fact as to whether 1) "but for" Berkowitz's negligence they would have obtained a more favorable result in the original underlying lawsuit; 2) the post-verdict settlement was an effort to mitigate damages; and 3) Berkowitz's handling of the post-verdict settlement agreement resulted in Behm's second lawsuit against them. Finding no error, we affirm the judgments.

---

[1] Steven Berkowitz worked with the Glassman firm and then before the trial of the underlying lawsuit moved to the Kadish Law Group. The Glassman firm was never listed as attorney of record for appellants in this matter and did not join in the motion for summary judgment brought by Steven Berkowitz and the Kadish Law Group. Following the trial court's grant of summary judgment in favor of Berkowitz and the Kadish Law Group, the Glassman firm announced its intention to move for judgment as a matter of law based on the trial court's ruling. The Vorzimers and the Glassman firm then stipulated judgment should be entered in favor of the Glassman firm based solely on the trial court's findings of fact and conclusions of law. The parties stipulated the Vorzimers retained the right to appeal from those findings of fact and conclusions of law. Our decision affirming the judgment entered following the grant of summary judgment is necessarily an affirmance of the judgment on stipulation as well.

## BACKGROUND

In 2014, Barbara Behm entered into an agreement with C&L for a $1.4 million cash loan, secured by Behm's property on Edgeware Road in Los Angeles County. The loan terms set an interest rate of 9.99 percent; if a payment was late, the interest rate increased to 24.99 percent. This loan was funded by C&L's investors.

Behm missed payments on the loan and the interest rate rose. In September 2014, C&L recorded a notice of default on the Edgeware property. Simultaneously, John Lukes Jr. of C&L approached John Vorzimer[2] and suggested he buy the loan note or buy the property itself from C&L after C&L took it back. Vorzimer had a longstanding relationship with C&L.

In November 2014, the Vorzimers and Lukes Jr. visited the Edgeware property and met with Behm. Behm believed the purpose of the visit was to discuss lending options so she could keep her home.

After the visit, Lukes Jr. proposed that appellants invest $95,000 in the loan. In returned, appellants could expect repayment of the principal with interest, with the possibility of purchasing the property after foreclosure by buying the loan note for $1.632 million, "assuming no bidders." The value of the property was estimated at $1.8 million to $2.5 million.

In December 2014, appellants and Lukes Jr. entered into a "private" agreement, in which Lukes Jr. offered appellants an "off-market" opportunity to buy the property and appellants agreed to pay him a commission if they obtained the property through the foreclosure sale. The amount of the commission was

---

[2] Hereafter "Vorzimer" refers to John Vorzimer only.

4

$1.825 million minus the actual purchase price of the property. As part of the agreement, the note on the Behm loan was "assigned" to appellants. Although two attorneys pointed out to Vorzimer that this transaction had risks for him, he entered into the agreement anyway.

Behm declared bankruptcy to stay foreclosure on the Edgeware property. Appellants paid C&L's attorneys to challenge the bankruptcy stay. Their challenge was successful. In April 2015, the foreclosure sale went forward and appellants obtained title to the property.

After appellants obtained title, they hired Berkowitz to file an unlawful detainer action against Behm. In November 2015, the action went to trial and the court ruled in favor of appellants and Behm was ordered to leave the property.

On April 8, 2015, Behm had filed a lawsuit against C&L. In May 2015, she added appellants as Doe defendants. She alleged C&L had violated numerous provisions of state and federal lending laws, including California's predatory lending law. She further alleged appellants conspired with C&L to place her into a loan she could not repay, assess thousands of dollars in late fees, and then foreclose on the property and sell it for a profit. This is the conspiracy lawsuit.

In December 2015, Berkowitz, as Vorzimers' counsel in the conspiracy lawsuit, sent an email to Behm's attorney, asserting the lawsuit lacked any basis in law or fact and was intended to delay Behm's eviction from the Edgeware property. Berkowitz pointed out that the court in the unlawful detainer action had found no wrong-doing by appellants and had ruled in their favor. Behm's attorney did not agree with this assessment.

Berkowitz advised his client Vorzimer to file a cross-complaint against C&L for indemnity. Vorzimer declined because he had an ongoing business relationship with C&L.

Throughout the early stages of the conspiracy lawsuit, Berkowitz sought more information about the transaction from Vorzimer and C&L, but none was forthcoming. Berkowitz continued to recommend that the Vorzimers seek indemnification from C&L, if only to distance them from C&L and the conspiracy allegations. After his initial assessment, Berkowitz expressly advised Vorzimer that he faced liability in the conspiracy lawsuit. Berkowitz specifically told Vorzimer he could be liable even if he did not "completely participate" in the alleged wrongdoing, but simply provided assistance to C&L in executing its scheme.

The parties discussed settlement before Behm's lawsuit went to trial. Behm was seeking in excess of $1 million and Vorzimer admitted he was not in a position financially to settle the lawsuit for the amount Behm wanted.

Trial began in October 2016 and lasted 15 days. Vorzimer, Lukes Jr., and Lukes Sr. gave somewhat inconsistent accounts of their interactions with Behm. Vorzimer testified he did not discuss purchasing the note or the property or loaning money directly to Behm. He never contacted Behm to tell her he had become the owner of the note. He was unaware of any steps taken to inform the Bankruptcy Court that appellants were the parties seeking relief, not C&L. He did not attend the foreclosure sale.

Lukes Jr. testified that the purpose of the visit to Behm's home was to sell the loan to appellants, get them to execute a second trust deed, or persuade them to buy the property outright. Vorzimer rejected Behm's suggestion that he buy the property

6

but give Behm a buy-back option.  Lukes Jr. did not tell Behm he had sold the note to appellants in December 2014.  Lukes Sr. testified C&L did not make loans on owner-occupied property; Behm's loan application, however, said the property was owner-occupied.  He testified the purpose of the December visit was to see if Vorzimer could offer Behm a second loan to solve her foreclosure problems.  Ultimately, however, the plan was to sell the Edgeware property to appellants.

At the conclusion of the liability portion of the trial, the jury awarded Behm about $5 million in economic damages and $25 million in non-economic damages, for a total award of $30,581,000.  The jury found appellants participated in a conspiracy with C&L to commit a concealment and an intentional misrepresentation.  The jury found appellants and C&L acted with malice, fraud and oppression.

Before the punitive damages phase of the trial, the parties settled the lawsuit.  C&L agreed to pay Behm $6.4 million.  Appellants agreed to convey title to the Edgeware property back to Behm and waive a $50,000 judgment they had obtained against Behm in the unlawful detainer action.  In the course of working out the settlement, Berkowitz warned appellants not to remove any fixtures or attachments from the property.

Vorzimer then threatened to sue C&L for his losses in the Edgeware transaction, which he estimated was in seven figures.  Appellants subsequently settled with C&L without Berkowitz's involvement.  The parties mutually released all claims against each other with no exchange of consideration.  Vorzimer stated he entered into the agreement because he was involved in several outstanding deals with C&L and C&L could not complete the deals unless Vorzimer signed the agreement.

C&L then brought a malpractice action against counsel of record in the conspiracy lawsuit. As it happened, Lukes Jr. and Vorzimer discussed an arrangement whereby C&L would finance a legal malpractice action by appellants against Berkowitz in exchange for a share of any recovery. In July 2017, the Vorzimers brought this action for legal malpractice against Berkowitz.

In granting summary judgment, the trial court overruled all of the Vorzimers' evidentiary objections to Berkowitz's evidence and found that Berkowitz had met the "burden of proof by setting forth evidence that demonstrates Plaintiffs would not have received a better result 'but for' any act or omission by [Berkowitz] in the underlying litigation." The court then explained: "As an initial matter, Plaintiffs have not complied with the requirement for separate statements under Code of Civil Procedure section 437c, subdivision (b)(3), with regards to the responses to [Berkowitz's] undisputed facts. . . . Plaintiffs have included the response 'Disputed' to various statements but have only indicated that the statements is '[n]ot supported by admissible evidence. See Evidentiary Objections filed concurrently herewith.' This is not a proper response to Defendants' separate statement because a plaintiff in opposition must include a 'reference to the supporting evidence' that gives rise to a disputed material fact." The court noted: "Defendants' UMF [Undisputed Material Fact] No. 6 is the only statement for which Plaintiffs have complied" but that plaintiffs' evidentiary offering did not create a disputed issue of fact. "Therefore, the court finds that Plaintiffs do not dispute any of Defendants' undisputed material facts that are set forth in Defendants' separate statement."

The trial court continued: "Since none of Defendants' facts are in dispute (see discussion above), Plaintiffs have conceded, among other facts, that 1) Plaintiffs were not in a position to settle the Behm Lawsuit prior to the jury's rendering of a special verdict; 2) Plaintiffs chose not to bring a cross-complaint against C&L during the Behm Litigation; 3) after the jury's $30.85 million special verdict and before the punitive damages stage of the Behm Lawsuit, Plaintiffs [] settled the Behm Lawsuit for no consideration and transferred the Edgeware Property to Behm; and 4) Plaintiffs could have sued C&L for indemnity thereafter, but chose not to and instead settled any potential indemnity claims against C&L without the assistance of Defendants. These facts, among the others discussed above, indicate that Plaintiffs cannot show that they would have obtained a better outcome of the Behm Lawsuit 'but for' Defendants' alleged negligent conduct."

## DISCUSSION

We review de novo the trial court's order granting summary judgment. (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273.) Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).)[3] To prevail on a summary judgment motion, a defendant must demonstrate the plaintiff's cause of action cannot be established or that a complete defense exists. (*Id.*, subds. (o), (p); *Bardin v.*

---

[3] Further undesignated statutory references are to the Code of Civil Procedure.

9

*Lockheed Aeronautical Systems Co.* (1999) 70 Cal.App.4th 494, 499–500.)

Procedurally, the moving party must file "a separate statement setting forth plainly and concisely all material facts that the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence." (§ 437c, subd. (b)(1).) Where, as here, the moving party meets his or her burden of showing that one or more elements of the cause of action cannot be established, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause. Section 437c, subdivision (b)(3) sets forth the procedure for such a showing: "The opposition papers shall include a separate statement that responds to each of the material facts contended by the moving party to be undisputed, indicating if the opposing party agrees or disagrees that those facts are undisputed. The statement also shall set forth plainly and concisely any other material facts the opposing party contends are disputed. Each material fact contended by the opposing party to be disputed shall be followed by a reference to the supporting evidence. Failure to comply with this requirement of a separate statement may constitute a sufficient ground, in the court's discretion, for granting the motion." (*Id.*, subd. (b)(3).)

On appeal, we view the evidence in the light most favorable to the nonmoving party and strictly scrutinize the evidence offered by the moving party. (See *Kelly v. Stamps.com Inc.* (2005) 135 Cal.App.4th 1088, 1098.)

To prevail on a legal malpractice claim, a plaintiff "must prove four elements: '(1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession

10

commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence.' " (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1581.) " '[T]he elements of causation and damage are particularly closely linked.' [Citation.] The plaintiff must prove, by a preponderance of the evidence, that but for the attorney's negligent acts or omissions, he would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred." (*Id.* at p. 1582; see *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241.).)

A.    ***The Trial Court Correctly Understood the Standard of Proof To Be "By a Preponderance of the Evidence."***

The essence of appellants' first two claims on appeal is that the trial court erroneously applied a heightened standard of proof to their malpractice claims: to wit, "to a legal certainty" rather than "by a preponderance of the evidence." As appellants implicitly acknowledge, there is nothing in the trial court's written ruling to suggest that it adopted such a standard. They contend, however, that other rulings or statements by the court show it did adopt a higher burden of proof.

In their first claim, appellants argue the trial court mistakenly believed this was a "settle and sue"[4] case, causing the

---

[4]    A "settle and sue" legal malpractice action is filed by a former client suing after litigation has been settled. The basis of the claim is that the settlement was less than it should have been, or more than it had to be, by reason of the negligence of the former client's attorney. (*Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 157 (*Filbin*).)

court to apply the "to a legal certainty" standard of proof instead of the default "preponderance of the evidence" standard applicable in civil lawsuits.  Appellants correctly note the term "to a legal certainty" is ambiguous.  (See *Masellis v. Law Office of Leslie F. Jensen* (2020) 50 Cal.App.5th 1077, 1092 [the ambiguous term "legal certainty" simply means the level of certainty required by law, which is established by the applicable standard of proof.].)  As the *Masellis* court found, none of the settle and sue cases using that term "explicitly state the appropriate burden of proof is the 'legal certainty' standard *and* explain how that standard fits within the framework of the three common standards of proof listed in Evidence Code sections 115 and 502.  These omissions lead us to conclude the cases using the term 'legal certainty' are not authority applying a heightened burden of proof to the elements of causation and damages in a legal malpractice action." (*Masellis*, at p. 1092.)  The court held that the preponderance of the evidence standard is the applicable standard of proof in a "settle and sue" legal malpractice action. (*Ibid.*)  Given the dearth of case law applying a "legal certainty" standard to settle and sue cases, we find the trial court's mere belief that this was a settle and sue case does not lead to the conclusion that the court also believed it was appropriate to impose a higher standard of proof on appellants.

Significantly appellants ignore the trial court's actual reference to appellant's standard of proof:  the court stated "Plaintiffs' burden on the instant motion is not dependent on whether there was a settlement or a verdict [citing *Filbin, supra*, 211 Cal.App.4th at p. 167]."  Berkowitz had also argued in his

12

summary judgment motion,[5] that "Plaintiff's burden is not dependent on the existence of a settlement versus a verdict. [I]n both litigation and transactional malpractice actions, the plaintiff 'must show that *but for the alleged malpractice, it is more likely than not that the plaintiff would have obtained a more favorable result.*' ([*Viner v. Sweet, supra,* (2003) 30 Cal.4th at p. 1244].)" Respondents thus described and emphasized that appellants' burden was governed by the preponderance of the evidence standard, and the trial court agreed.[6]

---

[5] The copy of the reply brief in support of Berkowitz's motion for summary judgment in the Appellants' Appendix does not appear to be a copy of the brief which was filed in the trial court. It is not on numbered pleading paper and has no page numbers. The ninth page of this document does not discuss settle and sue cases or the burden of proof. Our quotes are from the fifth page of this document at page AA 1463.

[6] Perhaps in an attempt to show that this was not a settle and sue action, appellants contend they raised a triable issue of material fact that the settlement agreement with Behm was an effort to mitigate their damages. The only relevance of the trial court's view of whether this was a settle and use case is that the trial court might have misunderstood the burden of proof. As we explain, the trial court did not. It indicated its belief that the usual preponderance of the evidence standard applied. Appellants fail to present any other argument that relies on the characterization of the settlement as an attempt to mitigate damages. " 'We are not obliged to make other arguments for [appellant] [citation], nor are we obliged to speculate about which issues counsel intend to raise.' " (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; see *In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 ["We are not bound to develop appellants' arguments for them."].)

In their second claim, appellants similarly argue that the trial court's "outright rejection of [their] evidence as 'uncertain and inherently speculative' . . . and disregarding [their] arguments as 'irrelevant' . . . , while accepting nearly all of the Defendants' evidence and arguments . . . , was a result of the court's incorrect assumption that [appellants] were 'settle and sue' plaintiffs who had to meet a more stringent 'legal certainty' burden of proof on their case." Again, this ignores the trial court's actual discussion of the applicable standard of proof.

Further, the trial court used the phrase "uncertain and inherently speculative" only once in its ruling, and not as the basis to reject appellants' evidence. Rather the court stated respondents had offered sufficient (undisputed) evidence that the amount of damages that could have been awarded at the upcoming punitive damages phase of the trial was "inherently speculative and uncertain." This narrow statement is correct and in no way rejects any evidence properly offered by appellants.

The trial court used the word "irrelevant" only once to describe appellants' argument that Berkowitz's initial pre-trial assessment of the lawsuit as frivolous and subject to a section 128.5 motion proved appellants could have achieved a better result in the conspiracy lawsuit. As the court pointed out, estoppel does not bind an attorney to his or her previous position in litigation when the attorney is later sued by the client. (See *Loube v. Loube* (1998) 64 Cal.App.4th 421, 428 (*Loube*).) As we discuss below, the trial court was correct in this assessment. Even if the trial court had been mistaken, however, this one mistake on one point does not amount to "disregarding" any other arguments by appellants. Further, it would be a mistake concerning the principles of estoppel, not the standard of proof.

14

Appellants have not provided accurate citations to the record, legal authority, or cogent reasoning to support their sweeping claim that Berkowitz prevailed only because the trial court erroneously applied a higher standard of proof. Simply showing that the trial court accepted nearly all of respondent's evidence does not show error. " 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.' " (*United Grand Corp. v. Malibu Hillbillies, LLC, supra*, 36 Cal.App.5th at p. 153.) "We may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*Ibid.*)

Further, the trial court made clear in its written ruling that it accepted respondents' evidence because appellants failed to comply with the requirement that a party opposing summary judgment identify or specify the evidence which disputes the moving party's statement of undisputed fact. The trial court was absolutely correct on that point and appellants do not contend otherwise on appeal. The standard of proof in any civil case has absolutely no relevance to or impact on the consequences of failing to follow statutory procedures in opposing a motion for summary judgment.

B.    ***Appellants Did Not Raise Disputed Issues of Material Fact As to Whether Counsel's Actions Were the 'But For' Causation of Damages.***

1.    *Berkowitz's Statements Do Not Raise a Triable Issue of Material Fact About Appellants' Liability.*

Appellants contend Berkowitz's own initial assessment that the claims were completely frivolous and subject to a section 128.7 motion tends to show that but for Berkowitz's negligence, appellants would have received a dismissal of the lawsuit with recovery of costs.  They contend, based on Berkowitz's statements, there was a triable issue of fact as to whether they would have received a better result but for Berkowitz's negligent defense of the case at trial.

The trial court rejected this argument, explaining, "the principles of estoppel cannot be used to bind an attorney to the attorney's previous position in instances where the attorney is later sued by a client for legal malpractice.  (See *Loube*[, *supra*,] 64 Cal.App.4th [at p.] 428; *Kerner v. Superior Court* (2012) 206 Cal.App.4th 84, 127.)  Further, Plaintiff[s] fails to provide evidence tending to dispute Defendants['] evidence, discussed above, in which Defendants show that Plaintiffs were apprised of their risk of liability in the Behm Lawsuit.  Therefore, this argument raises no triable issue."

Appellants have not shown this ruling was incorrect.  They cite no legal authority disagreeing with the authorities relied upon by the trial court and they do not argue the trial court misunderstood the cited cases.  The *Loube* court, in fact, is the mirror image of this case.  In *Loube* the clients argued their former lawyers' argument at a prove-up hearing that their claims were worth about $250,000 should prevent the lawyers from

16

claiming in the malpractice action that the claims were worthless. (*Loube*, *supra*, 64 Cal.App.4th at p. 428.) Put differently, they contended their former lawyers' argument was irrefutable proof of the value of their claims. The *Loube* court rejected this proposition.

Appellants do not argue *Loube* or *Kerner* were wrongly decided. Nor do appellants factor into their "but for" causation analysis that counsel's early assessment of Vorzimer's exposure changed and he subsequently expressly advised Vorzimer of his liability under Behm's conspiracy theory.[7]

---

[7] In opposing the motion for summary judgment, Vorzimer filed a declaration which attached an email from Berkowitz discussing filing a section 128.7 motion or a demurrer. This occurred in August 2015, just days after appellants had been served with the complaint. On December 7, 2015, while discovery was still ongoing, Berkowitz sent an email to Vorzimer about the notice requirements for a section 128.7 motion. Berkowitz then sent a pre-section 128.7 "warning" email to Behm's attorney on December 14, 2015. Behm's attorney disputed that the lawsuit lacked a basis in fact or law. Ultimately Berkowitz did not file the motion.

Respondents UMF 33 is: "Vorzimer understood he had 'quite a bit of risk' in the *Behm* litigation. Lukes, Jr. testified that by March of 2016 he and John Vorzimer 'were understanding the exposure we had with the potential jury trial with respect to costs and risks' and he discussed with Vorzimer 'there are a lot of risks and costs associated with not going to arbitration.'" Appellants did not properly dispute this fact. In addition, John filed a declaration in opposition to summary judgment admitting Berkowitz advised him he had liability under a conspiracy theory.

Appellants only argument is that the trial court failed to recognize that Berkowitz's initial assessment shows "how badly [counsel] misjudged Behm's claims and directly affected [counsel's] ability to provide sound legal advice to the Vorzimers." Even assuming for the sake of argument that Berkowitz's early assessment showed misjudgment of Behm's claim and impaired his ability to provide sound legal advice, that would only create a triable issue of fact on the negligence element of legal malpractice. A defendant moving for summary judgment is only required to negate one element of a plaintiff's case. Here, Berkowitz negated the causation/better results elements. Even if Vorzimer could in theory have argued that he relied on Berkowitz's allegedly bad advice and elected to go to trial rather than settle, the undisputed evidence established that Vorzimer was not in a financial position to settle the case before trial. Thus, appellants did not create a triable issue of material fact.

2. *Appellants' First Amended Complaint Does Not Allege They Invested Money in Renovating the Edgeware Property in Reliance on Advice by Berkowitz.*

Appellants contended in opposition to the summary judgment motion that they invested $1 million in renovations to the Behm property in reliance on Berkowitz's advice that the Behm lawsuit was frivolous. This amount was material to their claim of damages caused by Berkowitz's alleged malpractice. They contend the trial court erred in finding appellants failed to allege such damages in their complaint. Appellants contend they specifically alleged that they were renovating the property and Berkowitz failed to account for the cost of the improvements when he negotiated the post-verdict settlement.

18

"[T]he burden of a defendant moving for summary judgment only requires that he or she negate plaintiff's theories of liability *as alleged in the complaint;* that is, a moving party need not refute liability on some theoretical possibility not included in the pleadings." (*Hutton v. Fidelity National Title Co.* (2013) 213 Cal.App.4th 486, 493.) "Furthermore, ' " ' "[t]he [papers] filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings and are not a substitute for an amendment to the pleadings." ' " [Citation.]' [Citation.] An opposing party's separate statement is not a substitute for amendment of the complaint. [Citation.] Similarly, ' " '[d]eclarations in opposition to a motion for summary judgment "are no substitute for amended pleadings." . . . If the motion for summary judgment presents evidence sufficient to disprove the plaintiff's claims, . . . the plaintiff forfeits an opportunity to amend to state new claims by failing to request it.' " [Citations.]' " (*Ibid.*)

Appellants rely on Paragraph 30 of the First Amended Complaint, which refers to Behm's second lawsuit for breach of the settlement agreement: "With respect to the Balaban Lawsuit, Defendants Berkowitz and the Kadish Firm, and each of them, negligently and carelessly breached their professional and ethical obligations to the Vorzimers in connection with the Balaban Lawsuit, *inter alia*, through: [¶] A. Failing to structure the settlement to account for the fact the Edgeware Property was undergoing renovations and remodel construction, failing to include in the settlement agreement an itemization of appliances, fixtures and other personal property that would be included in the conveyance of the Edgeware Property; [¶] B. Failing to structure the settlement such that the Vorzimers were conveying

the Edgeware Property in 'as is' condition, failing to structure the settlement to provide for Barbara Behm or her attorneys to conduct an inspection of the Edgeware Property prior to taking possession; and, [¶] C. Failing to take other measures to ensure that the Vorzimers were fully released from Barbara Behm's claims arising out of the Behm Lawsuit."

Nothing in this paragraph in any way suggests that appellants undertook the renovation in reliance on Berkowitz's advice about the Behm conspiracy lawsuit. The paragraph refers to the Balaban lawsuit, which involved Behm's post-settlement claims that appellants removed fixtures and intentionally damaged the house before moving out. These allegations contend Berkowitz was negligent in failing to describe the under construction status of the property and to identify and list personal property in the house which appellants did not intend to include when they conveyed the property back to Behm. Thus, the trial court correctly found appellants did not allege they spent $1 million in renovations in reliance on Berkowitz's advice.

C.     ***Appellants Did Not Raise a Triable Issue of Material Fact That Berkowitz's Handling of the Settlement Was Negligent or That They Could Have Obtained a Better Result.***

Appellants contend Berkowitz was negligent in not structuring the settlement to state that the property was being conveyed "as is" and to list the fixtures and appliances that would (or would not) be conveyed with the house. The trial court stated: "Plaintiffs do not dispute that [Berkowitz] told Plaintiffs not to remove any attachments or fixtures from the Edgewater property. (DUMF No. 62.) Therefore, Plaintiffs raise no triable issue." Appellants contend, in effect, that by focusing on

20

Berkowitz's advice the trial court missed the true triable issue of fact.  It is appellants whose focus is too narrow.

Berkowitz excerpted Behm's claims of appellants' alleged wrongful conduct in DUMF 73:  "Behm alleged Plaintiffs agreed to peacefully vacate the Edgeware Property by November 30, 2016 but 'from November 1, 2016 until they vacated on November 27, 2016 [Plaintiffs] intentionally, wantonly, and maliciously caused the following damage to [Behm's] personal and real property: removed fixtures, removed personal property, damaged structures (including, but not limited to, walls, flooring, plumbing, and electrical components), and otherwise left the property in a deplorable and unsafe condition and unfit for habitation, causing Plaintiff to incur damages and to rent another place in which to live.' "  Appellants did not properly dispute this fact and it is treated as undisputed.

In its written ruling, the trial court, in effect, treated as true the allegations of Behm's complaint that the damages occurred post-settlement.  Even if Behm had agreed to accept the property "as is" on the date the agreement was signed, that would not have precluded appellants' liability for violating the agreement *after* it was signed.  Although not expressly mentioned by the trial court, it is axiomatic that an agreement cannot legally exempt a party from responsibility for "willful injury" to the property of another.  (Civ. Code, § 1668.)

And because removing fixtures might possibly have been the result of a misunderstanding, rather than willful damage, the trial court pointed out in its ruling the undisputed fact that appellants were aware of the contractual requirement not to remove fixtures.  Thus, as the trial court impliedly found, any

21

failure to include "as is" language in the settlement agreement was not the cause of the post-settlement lawsuit by Behm.

What if the willful damage was inflicted before the settlement agreement was signed? Appellants' First Amended Complaint suggests, and they impliedly contend on appeal, just that. Thus, they now argue, if Berkowitz had negotiated the inclusion of an "as is" term in the settlement agreement or required Behm to inspect the Edgeware property before signing the agreement, appellants "would have been fully released from Behm's claims of property damage."

The trial court did not miss a triable issue of fact about the inclusion of an "as is" clause. Berkowitz offered evidence that Behm testified she would not have entered into the settlement if she had known about the damaged condition of the property. Put differently, Behm would not have accepted an "as is" term. Appellants have not presented any contrary evidence and offer no legal authority that an attorney commits malpractice when he fails to obtain an unobtainable concession in negotiations.

Appellants' options at the time of settlement discussions were to accept the settlement agreement without an "as is" clause or have no settlement agreement. Appellants do not contend or offer any evidence they would have refused the settlement agreement releasing them from the certain $30 million judgment with the possible addition of punitive damages if they had known that the lack of an "as is" clause would result in additional attorney fees. In other words, they have not shown that no settlement agreement would have been a better outcome than the settlement agreement actually obtained.

## DISPOSITION

The judgments are affirmed.  Respondents are awarded costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, J.

We concur:


BIGELOW, P. J.


GRIMES, J.