Filed 12/19/24  Williams v. Law Offices of Todd M. Friedman CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

|  |  |
|---|---|
| EBONY WILLIAMS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>LAW OFFICES OF TODD M. FRIEDMAN, P.C. et al.,<br><br>    Defendants and Respondents. | B327546<br><br>(Los Angeles County Super. Ct. No. 21STCV04275) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Maurice A. Leiter, Judge.  Affirmed.

Law Office of Neal S. Zaslavsky and Neal S. Zaslavsky for Plaintiff and Appellant.

Kaufman Dolowich, Barry Z. Brodsky, Steve R. Belilove, and Rosely George for Defendants and Respondents.

————————————————

Ebony Williams appeals from a judgment entered after the trial court granted the summary judgment motion filed by the Law Offices of Todd M. Friedman, P.C. (law firm), Todd Michael Friedman, and Meghan Elisabeth George (collectively, attorney defendants). Williams sued the attorney defendants for professional malpractice and related claims in connection with their representation of Williams in an employment discrimination action against Williams's former employer, Mercury Insurance Company. The attorney defendants moved to withdraw from their representation of Williams just over a year after entering into a contract to represent her. After the attorney defendants withdrew as counsel, Mercury filed a motion for summary judgment. Williams alleges in this action that because of the attorney defendants' negligent representation, she could not survive Mercury's summary judgment motion, and she was forced to reach a settlement with Mercury for "just pennies on the dollar."

Williams contends the court erred in granting the attorney defendants' summary judgment motion because there were triable issues of fact whether the attorney defendants were negligent or breached their duties to her, including by failing to propound any discovery against Mercury. However, the attorney defendants met their burden in moving for summary judgment by showing Williams could not prove causation or damages, and Williams failed to present any evidence in response other than the allegations in her complaint. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *The Allegations of the Complaint in This Action*

On February 3, 2021 Williams filed this action against the attorney defendants for professional negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violation of the unfair competition law (UCL; Bus. & Prof. Code, § 17200 et seq.). After the trial court sustained the attorney defendants' demurrer to the first amended complaint with leave to amend, Williams filed the operative second amended complaint (complaint) on July 30, 2021.

The complaint alleges Williams was employed at Mercury from March 2007 until May 14, 2018. According to the complaint, Williams complained to her supervisors about ongoing racial discrimination and harassment, and Mercury retaliated by wrongfully terminating her employment. In August 2018 Williams contacted the law firm and had a telephone conversation with George, in which Williams provided details about her experience with Mercury. In response, George "stated her belief that [Williams] appeared to have a good case."

On September 25, 2018 Williams entered into a contract with the law office to represent her with respect to her claims for employment discrimination and wrongful termination against Mercury. The contract (attached as an exhibit to the complaint) stated under the heading "duties of lawyers": "We will perform the legal services called for under this agreement, keep you informed of the progress and developments in the case, and respond promptly to your inquiries and communications. We do not guarantee the outcome of your matter; there can be no

3

assurance that you will recover any sum or sums.  We will represent you vigorously and with the utmost diligence, however, and will give you our best legal judgment."  The contract further provided, "Should you fail to cooperate with our prosecution of this case, the Firm reserves the right to terminate our representation.  In this instance, the Firm will send you written correspondence confirming our termination."[1]  Friedman sent a "guidelines" letter to Williams (also attached as an exhibit to the complaint) stating that the attorneys "will request your employment file from your former employer" and "will timely review your file and prepare a demand letter."  The guidelines letter advised Williams to "please be prepared to communicate with the attorney handling your case *at least once* a week by telephone; arrangements for this weekly meeting can be made via email."

The law firm received Williams's wage statements and personnel records from Mercury on November 12, 2018, but the attorney defendants did not contact Williams to discuss the results of their file review or the status of a demand letter.  After waiting several months, Williams called George, who was assigned to handle Williams's case, but Williams could not reach her.  In February 2019 Friedman called Williams and informed her that George was on a leave of absence.  The attorney defendants did not file a complaint on Williams's behalf against Mercury (the Mercury action) until April 3, 2019, nearly five

---

[1]    Capitalization, boldface, and underlining in the contract, guidelines letter, complaint, and other documents are omitted.

months after receiving Williams's employment records from Mercury.

Williams provided George with the names and contact information for several witnesses to the racial discrimination and harassment of Williams, but the attorney defendants never contacted them. Further, although the guidelines letter stated the attorney defendants will "take the deposition of any individuals who may provide information relevant" to the lawsuit, they never took any depositions or served any discovery requests on Mercury. Because the attorney defendants did not conduct any discovery or investigation of Williams's claims, Williams "was at a severe disadvantage" and did not have sufficient evidence to survive the summary judgment motion Mercury subsequently filed. Further, Williams alleges, "if the Law Firm had properly gathered sufficient evidence to support Williams' meritorious claims, she would not have had to settle the case for pennies on the dollar. Literally, any amount of discovery propounded on Mercury would have improved Ms. Williams' chances at surviving the motion for summary judgment, and would have increased the settlement value of the case."

Moreover, the attorney defendants failed to notify Williams that in April 2019 Mercury served a notice to take her deposition and requests for production of documents. Friedman first informed Williams by letter on July 8, 2019 that her rescheduled deposition was set for August 12, 2019. In his letter, Friedman requested that Williams be available by telephone on August 9 for 30 minutes to prepare for her deposition. On August 9 George called Williams, but George "provided very little information or guidance during the call," leaving Williams

5

"feeling scared, nervous, and unprepared." Further, George stated in the call that neither she nor Friedman would be available to represent Williams at the deposition. Instead, the attorney defendants sent a contract attorney who was unfamiliar with Williams's case to defend Williams at the deposition.

The contract attorney provided little support during the deposition and "raised less than a handful of objections, despite a series of objectionable inquiries propounded by" Mercury's attorney. Because the attorney defendants failed to properly prepare Williams for her case and sent an attorney who was unfamiliar with the case, Williams performed poorly during her deposition, which enabled Mercury "to obtain compromising information," and Williams's "deposition testimony substantially negatively affected her ability to survive a motion for summary judgment and [was] used against her in later settlement negotiations." Moreover, the attorney defendants never obtained a copy of Williams's deposition transcript in order for her to review her testimony for accuracy pursuant to Code of Civil Procedure section 2025.520.

On September 6, 2019 Friedman sent Williams a letter requesting she provide copies of four documents that had been discussed at her deposition and stating the law firm had been unable to reach Williams. The letter added that if the law firm did not receive a response from Williams by September 20, it "'may be forced to withdraw from [Williams's] case.'" Williams discovered at that point that the law firm had sent her two emails regarding the documents. On September 17 Williams forwarded the requested documents by email to Friedman and apologized "'for not getting back to [him] sooner,'" explaining her email account was "'completely bogged down.'"

On November 13, 2019 the attorney defendants filed a motion to be relieved as counsel for Williams based on her failure to respond to the two emails they had sent her about document production. The attorney defendants did not discuss their intent to withdraw with Willams, "nor did they advise her in writing, as they had promised to do in the guidelines letter." When Williams called George about the motion, George advised Williams to start looking for new counsel; when Williams asked if she should attend the hearing, George "replied it was her choice, but such motions were routinely granted and 'you can't make someone work for you.'" But for George's statements, Williams would have contested the motion, and if successful, Williams would still be represented by the attorney defendants. And had she attended the hearing, "she would have been afforded a better chance to advocate her position as well as be informed by the court on how to proceed." After the attorney defendants notified Williams in a February 5, 2020 email that they would be relieved as her counsel once the trial court granted the motion, Williams requested the attorneys return her file. The attorney defendants did not return Williams's complete file despite her multiple requests.

B.    *Williams's Demurrer to the Answer*

On January 28, 2022 Williams filed a demurrer to the attorney defendants' answer to the complaint. Williams argued the answer's affirmative defenses were uncertain, ambiguous, and failed to state facts sufficient to constitute the defenses. In opposition, the attorney defendants argued the "third through twelfth affirmative defenses based on intervening/superseding cause, failure to mitigate, laches, unclean hands, estoppel,

waiver, consent, unjust enrichment, comparative fault and collateral estoppel, [are] self-evident and provide sufficient notice to [Williams] to meet the defenses." The attorney defendants also asserted that more specific facts to support the defenses were already provided in their demurrer to Williams's complaint and their responses to her extensive discovery. With respect to Williams's demurrer to the first affirmative defense for failure to state a cause of action, they argued there was no need to plead any facts in support of the defense because it challenged the sufficiency of the complaint.

On May 19, 2022, following argument from the attorneys, the trial court overruled the demurrer. The court found the "answer provides a clear list of affirmative defenses and alleges ultimate facts."

C.      *The Attorney Defendants' Motion for Summary Judgment*

On September 16, 2022 the attorney defendants moved for summary judgment. They argued Williams could not establish they were the cause of her allegedly inadequate settlement with Mercury because they withdrew as her counsel on February 5, 2020, eight months prior to the October 2020 decision by Williams and her new attorney not to oppose Mercury's summary judgment motion and instead to settle with Mercury. Further, Williams could not prove she sustained damages as a result of her settlement with Mercury because she refused to answer questions during her deposition in this action about her negotiation of the Mercury settlement (or the amount), why she accepted the settlement, or why she did not oppose Mercury's summary judgment motion. The attorney defendants further argued that Williams's own deposition testimony in the Mercury

8

action and this action established she was terminated because she used her position as an accounts payable clerk to view confidential vendor invoices of a third-party investigator who investigated Williams's complaint of discrimination by her supervisors. In addition, Williams used the confidential information in an email to the employee relations department. Thus, the attorney defendants argued, Williams settled her claims prior to the hearing on Mercury's summary judgment because she could not establish a prima facie case of race discrimination and wrongful termination.

In support of their summary judgment motion, the attorney defendants submitted the transcripts and exhibits from Williams's depositions taken in the Mercury action and this action.[2] At her deposition in this action, Williams acknowledged that on September 8, 2017 she received an employee written warning from her supervisors, Greg Voorhies and Michelle Oerlemans. In the written warning, Oerlemans documented Williams's allegedly insubordinate and unprofessional behavior during the period from March to July 2017, which included arguments with Oerlemans about coverage of the payment desk. Williams submitted a response in December 2017, in which she asserted that taking payments at the payment desk disrupted her own work. Williams also reported that two coworkers were hostile or rude toward her but Oerlemans did nothing to address their behavior. Williams also claimed Oerlemans falsely accused her of using profanity during a group meeting; required Williams

---

[2] The trial court granted the attorney defendants' request for judicial notice of Mercury's summary judgment motion, which included excerpts of Williams's deposition testimony and related deposition exhibits in the Mercury action.

9

to ask permission to use the restroom or to take breaks; "deceitfully added a verbal warning" to Williams's file; and made statements that Williams felt showed bias against Black people and individuals of Mexican descent.[3]  At Williams's request, Mercury retained a third-party investigator, Sherri McInnes, to investigate the issues raised in Williams's response. Subsequently, Amy Lindberg, Mercury's senior human capital manager, informed Williams that McInnes's investigation did not corroborate Williams's complaint of race discrimination or harassment.

In a May 9, 2018 email response to Lindberg, Williams questioned how McInnes could interview 13 people at a cost of $38,000 yet make no findings.  In her deposition in the Mercury action, Williams admitted that she was not allowed to use financial information such as vendor invoices for any purpose other than company business and that if she violated the policy she could be terminated.  Williams also acknowledged that she looked up the invoices from McInnes's company in the accounts payable system and added up the total amount of $38,000 to respond to Lindberg's email.[4]  Williams testified Yeager met with her on May 10, 2018, and at the meeting Williams admitted that she looked up the invoices in the system and used a calculator to add the sum.  After questioning Williams, Yeager suspended her without pay.  The following Monday, Yeager informed Williams

---

[3]     Williams also testified she made several reports of harassment by Oerlemans, supervisor Jennifer Roberts, and coworker Margarita to human resources personnel, but Williams could not recall her specific complaints.

[4]     In her deposition in this action, Williams testified Lindberg gave her McInnes's invoices in order for Williams to pay them.

10

that her employment was terminated because she had used Mercury's confidential financial information for her own purposes.

In Williams's deposition in this action, her attorney instructed her not to answer deposition questions about her defenses to Mercury's summary judgment motion, why Williams settled, or the terms of the settlement agreement with Mercury.

In opposition to the summary judgment motion, Williams argued the attorney defendants committed legal malpractice because they conducted no discovery in the nearly one year that they represented her. Williams claimed she "sufficiently pleaded and established" that the attorney defendants' mishandling of the Mercury action, in particular the failure to conduct discovery, was "a substantial factor in her damages." Williams asserted, "[B]ut for the failure of these Defendants to prosecute Ms. Williams' underlying case in a manner consistent with the standards of our legal community (which include conducting discovery), Ms. Williams would not have faced the prospect of having no *admissible* materials to counter Mercury's motion for summary judgment, and indeed would have been in a position to try to salvage a small settlement in the face of a likely loss of that motion due to these Defendants' negligence and breach of fiduciary duty to Ms. Williams."

Williams further argued that the attorney defendants' assertion that her claims against Mercury lacked merit showed either (1) the attorney defendants failed to conduct a reasonable investigation of her claims before filing the complaint in violation of Code of Civil Procedure section 128.7, or (2) they lied about the merits of Williams's action against Mercury. Williams also argued the summary judgment motion failed to address the

11

sufficiency of her causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violations of the UCL.

The only supporting declaration Williams submitted in support of her opposition was from her attorney, Neal S. Zaslavsky, in which he included Friedman's and George's responses to Williams's requests for admission. In their responses, Friedman and George admitted they did not serve any written discovery on Mercury or depose anyone from Mercury. Friedman and George did not admit or deny they believed Williams's claims against Mercury had merit, instead interposing objections. Williams did not submit any other evidence in support of her opposition.

D.    *The Trial Court's Ruling and Judgment*

Following argument from counsel, on December 15, 2022 the trial court granted the attorney defendants' summary judgment motion. The court concluded the attorney defendants met their initial burden of proof on each cause of action because Williams could not establish their conduct caused her to settle the Mercury action for less than it was worth given that she refused to answer deposition questions about her decision not to oppose Mercury's summary judgment motion, her defenses to the motion, and the circumstances of the Mercury settlement. The court also held Williams failed to meet her burden to establish a triable issue of fact. The court rejected Williams's argument that she would have defeated Mercury's summary judgment motion had the attorney defendants conducted discovery. The court reasoned, "Plaintiff does not explain or present evidence showing what information or documents would have been discovered in

12

the Mercury action.  Nor does Plaintiff explain how the information or documents could have been used to defend against Mercury's motion for summary judgment.  Plaintiff fails to explain or present evidence connecting Defendants' conduct to her allegedly undervalued settlement.  And Plaintiff does not provide evidence showing what her damages would have been against Mercury, or the potential amount of a settlement with Mercury had discovery been conducted.  [¶]  Plaintiff has not presented evidence showing Defendants' actions or inactions caused her damages."

On January 5, 2023 the trial court entered judgment in favor of the attorney defendants and against Williams.  Williams timely appealed.[5]

---

[5]     In her opening brief, Williams contends the trial court erred in overruling her demurrer to the attorney defendants' answer.  "[A]n order overruling a demurrer is not directly appealable, but may be reviewed on an appeal from the final judgment (Code Civ. Proc., [§]§ 904.1, 906)." (*San Diego Gas & Electric Co. v. Superior Court* (1996) 13 Cal.4th 893, 912-913; accord, *Medina v. St. George Auto Sales, Inc.* (2024) 103 Cal.App.5th 1194, 1205.)  Williams appealed from the final judgment; however, in her notice of appeal Williams indicated her appeal was from the January 5, 2023 "[j]udgment after an order granting a summary judgment motion."  Because Williams did not identify the order overruling her demurrer to the answer in her notice of appeal, she failed to preserve her right to appeal the order.  "While a notice of appeal must be liberally construed, it is the notice of appeal which defines the scope of the appeal by identifying the particular judgment or order being appealed." (*Morton v. Wagner* (2007) 156 Cal.App.4th 963, 967; accord, *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89-90 [because "plaintiffs' notice of appeal identifies only . . . the

**DISCUSSION**

A.      *Standard of Review*

Summary judgment is appropriate only if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668.)  "'"'"We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained."'  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party."'"'"  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347;

---

judgment after an order granting a summary judgment motion," they "failed to preserve their right of appeal of the order denying their petition for writ of mandate"].)

Even assuming Williams preserved her appeal of the order overruling her demurrer to the answer, Williams failed to show she was prejudiced by the order.  (See *Medina v. St. George Auto Sales, Inc., supra*, 103 Cal.App.5th at p. 1206 [in an appeal from an order overruling a demurrer, "the appellant must 'show the purported error constituted prejudicial, or reversible, error (i.e., caused a miscarriage of justice)'"].)  Regardless of whether the trial court erred by not striking the affirmative defenses in the answer, Williams was not prejudiced because the summary judgment motion was based on Williams's inability to prove an element of her causes of action, not the attorney defendants' affirmative defenses.

14

accord, *Doe*, at p. 669; *Camden Systems, LLC v. 409 North Camden, LLC* (2024) 103 Cal.App.5th 1068, 1077-1078.)

A defendant moving for summary judgment has the initial burden of presenting evidence that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853; *Camden Systems, LLC v. 409 North Camden, LLC, supra*, 103 Cal.App.5th at p. 1078.) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850; *Camden Systems, LLC*, at p. 1078.)

B.    *The Trial Court Did Not Err in Granting the Attorney Defendants' Summary Judgment Motion*

Williams contends the trial court erred in granting the summary judgment motion because, as shown by the facts in her verified complaint in this action, there were triable issues of fact whether the attorney defendants committed professional negligence in prosecuting the Mercury action. Williams also argues there were triable issues of fact as to her causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, and violations of the UCL. The attorney defendants respond that Williams failed to present any evidence in her opposition to establish causation and damages. The attorney defendants have the better argument.

15

1. *Williams failed to present a triable issue of fact with respect to her professional negligence cause of action*

"The elements of a cause of action for professional negligence are (1) the existence of the duty of the professional to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) breach of that duty; (3) a causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional negligence." (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 821 (*Oasis West*) [stating elements of professional negligence in context of lawsuit against an attorney]; accord, *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199 [stating same elements for legal malpractice claim].)[6] "In a litigation malpractice action, the plaintiff must establish that *but for* the alleged negligence of the defendant attorney, the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred." (*Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241; accord, *Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1582 (*Namikas*) ["The plaintiff must prove, by a preponderance of the evidence, that but for the attorney's negligent acts or omissions, he would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred."].)

"'The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of

---

[6]  We refer to Williams's cause of action as one for professional negligence although it is more commonly referred to as legal malpractice when alleged against an attorney.

16

action for negligence.  [Citations.]  Hence, until the client suffers appreciable harm as a consequence of [the] attorney's negligence, the client cannot establish a cause of action for malpractice.'" (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 749-750; accord, *Knapp v. Ginsberg* (2021) 67 Cal.App.5th 504, 526.)  "'It is not enough for [the plaintiff] to simply claim . . . that it was possible to obtain a better settlement or a better result at trial.  The mere probability that a certain event would have happened will not furnish the foundation for malpractice damages.'" (*Namikas, supra*, 225 Cal.App.4th at p. 1582; accord, *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154, 166 ["'[A] plaintiff who alleges an inadequate settlement in the underlying action must prove that, if not for the malpractice, she would *certainly* have received more money in settlement or at trial.'"].)

Although causation is ordinarily a question of fact for the jury, "[i]n legal malpractice claims, the absence of causation may be decided on summary judgment 'only if, under undisputed facts, there is no room for a reasonable difference of opinion.'" (*Namikas, supra*, 225 Cal.App.4th at p. 1583; accord, *Knapp v. Ginsberg, supra*, 67 Cal.App.5th at p. 526; *Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1528.)

The attorney defendants met their initial burden on summary judgment to negate causation and damages.  They presented evidence that their acts or omissions did not cause Williams's allegedly inadequate settlement with Mercury because they withdrew as her counsel in the Mercury action on February 5, 2020, which was three months before Mercury filed its summary judgment motion and eight months before Williams settled with Mercury in October 2020.  They also presented

17

evidence with respect to damages that Williams at her deposition in this action refused to answer questions about her defenses to Mercury's summary judgment motion, her decision to settle with Mercury, or the terms of the settlement agreement (including the settlement amount).

In opposition to the summary judgment motion, Williams presented Friedman's and George's responses to Williams's requests for admission, in which they admitted they did not take any depositions or conduct any written discovery. But evidence of the attorney defendants' failure to conduct discovery of Mercury is insufficient to establish that, but for their negligence, Williams would have obtained a better settlement with Mercury. Williams did not present her own declaration or any other evidence supporting her position that with more discovery she would have been able to successfully defend against Mercury's summary judgment motion by showing her case had merit. Nor did Williams present any evidence that had she successfully opposed the summary judgment motion, she would have recovered more money than she obtained in the settlement (given that there was no evidence of the settlement amount).

Williams contends on appeal that she pleaded in her complaint, which she claimed was verified, unrefuted triable issues of fact to support her professional negligence cause of action. However, her operative second amended complaint was not verified. And even if her operative complaint was verified, Williams could not rely on the allegations in a verified complaint to successfully oppose the summary judgment motion. (*College Hospital Inc. v. Superior Court* (1994) 8 Cal.4th 704, 720, fn. 7 ["a party cannot rely on the allegations of his own pleadings, even if verified, to make or supplement the evidentiary showing required

18

in the summary judgment context"]; *Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 297, fn. 3 ["'Since the object of the [summary judgment] proceeding is to discover *proof*, the adverse party must file an affidavit in opposition to the motion; he cannot rely on a verified pleading alone.'"]; *California Public Records Research, Inc v. County of Yolo* (2016) 4 Cal.App.5th 150, 182.)

2. *Williams failed to present triable issues of fact with respect to her causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing*

Because "the attorney undertakes to perform his duties pursuant to a contract with the client, the attorney's failure to exercise the requisite skill and care is also a breach of an express or implied term of that contract." (*Neel v. Magana, Olney, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 181, fns. omitted; accord, *GoTek Energy, Inc. v. SoCal IP Law Group, LLP* (2016) 3 Cal.App.5th 1240, 1250.) "[T]he elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." (*Oasis West, supra*, 51 Cal.4th at p. 821; accord, *Piedmont Capital Management, L.L.C. v. McElfish* (2023) 94 Cal.App.5th 961, 968.) "Generally, 'damages which are speculative, remote, imaginary, contingent, or merely possible cannot serve as a legal basis for recovery.'" (*Food Safety Net Services v. Eco Safe Systems USA, Inc.* (2012) 209 Cal.App.4th 1118, 1132.)

"The covenant of good faith and fair dealing, implied by law in every contract, exists merely to prevent one contracting party

19

from unfairly frustrating the other party's right to receive the *benefits of the agreement actually made*." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 349; accord, *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 26, fn. 7; *Racine & Laramie, Ltd. v. Department of Parks & Recreation* (1992) 11 Cal.App.4th 1026, 1031 ["The implied covenant of good faith and fair dealing rests upon the existence of some specific contractual obligation."].) As the Supreme Court explained in *Guz*, at page 352 (in the context of an employment action), "A breach of the contract may also constitute a breach of the implied covenant of good faith and fair dealing. But insofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely realleges that breach as a violation of the covenant is superfluous. This is because . . . the remedy for breach of an employment agreement, including the covenant of good faith and fair dealing implied by law therein, is *solely contractual*."

Williams does not allege a tortious breach of the covenant of good faith and fair dealing, instead alleging "[t]he covenant of good faith and fair dealing is implied into every contract in California." Further, the complaint alleges the same facts to support the cause of action for breach of the implied covenant of good faith and fair dealing that are alleged to support the breach of contract cause of action, specifically, that the attorney defendants failed to diligently represent Williams and not to withdraw from serving as her counsel, thereby denying her "the intended benefits of her contract." And the complaint alleges the covenant was breached to the extent there was no "technical breach" of the contract.

20

Regardless of whether the cause of action for breach of the implied covenant of good faith and fair dealing was superfluous given her breach of contract cause of action, Williams needed to show she was damaged to support both causes of action. As discussed, the attorney defendants met their initial burden to negate a showing of damages, and Williams did not in response present any evidence to create a triable issue of fact.

3. *Williams failed to present a triable issue of fact with respect to her breach of fiduciary duty cause of action*

"The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, breach of fiduciary duty, and damages." (*Oasis West*, *supra*, 51 Cal.4th at pp. 820-821; accord, *Safechuck v. MJJ Productions, Inc.* (2023) 94 Cal.App.5th 675, 698; *Knutson v. Foster* (2018) 25 Cal.App.5th 1075, 1093-1094 [breach of fiduciary duty is a tort distinct from professional negligence].) Where a breach of fiduciary duty cause of action arises from an attorney's negligent conduct, the same requirements for causation and damages that apply to a claim for professional negligence govern the breach of fiduciary duty claim. (*Knutson,* at p. 1094.) Here, Williams alleges the same facts to support her professional negligence and breach of fiduciary causes of action. The complaint alleges the attorney defendants had a fiduciary relationship with Williams, and "each of these lawyers failed to act as a reasonably careful and competent attorney would have acted under the same or similar circumstances."

Just as Williams has not created a triable issue of fact with respect to her professional negligence cause of action for lack of evidence she was damaged, her cause of action for breach of

21

fiduciary duty likewise fails.  The attorney defendants met their initial burden to negate a showing of damages, and Williams did not in response present any evidence to create a triable issue of fact.[7]

## DISPOSITION

The judgment is affirmed.  The Law Offices of Todd M. Friedman, P.C., Friedman, and George shall recover their costs on appeal.

FEUER, J.

We concur:

MARTINEZ, P. J.

STONE, J.

---

[7] Williams admits her UCL cause of action is derivative of her causes of action for professional negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty.  A UCL claim under Business and Professions Code section 17200 "'borrows' violations from other laws by making them independently actionable as unfair competitive practices."  (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1143; accord, *Cel-Tech Communications, Inc v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180.)  Because Williams's UCL claim is derivative of her other claims, it also fails.